USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-29-2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SECURITIES AND EXCHANGE
COMMISSION,

                        Plaintiff,

     v.

AMERICAN GROWTH FUNDING II, LLC,
PORTFOLIO ADVISORS ALLIANCE, INC.,
RALPH C. JOHNSON, HOWARD J. ALLEN
III, and KERRI L. WASSERMAN,

                        Defendants.
----------------------------------------------------------X

16-CV-828 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

    Plaintiff Securities and Exchange Commission ("SEC") brings this Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 17(a)(1), (2), and (3) of the Securities Act action against Defendants American Growth Funding II, LLC ("AGF II"), Portfolio Advisors Alliance, Inc. ("PAA"), Ralph C. Johnson, Howard J. Allen III, and Kerri L. Wasserman. The SEC alleges that Defendants violated these securities laws by making various false statements, and has now moved for summary judgment.

    As discussed in detail below, the SEC's motion for summary judgment is DENIED, because (1) there is a material dispute of fact over whether the representations in the 2011 PPM that AGF II had been audited in the past were material misrepresentations; (2) there is a material dispute of fact over whether the representations in the 2012 PPM that AGF II had been audited in the past were material misrepresentations; (3) there is a material dispute of fact over whether the representations in the Operating Agreement attached to the 2011 and 2012 PPMs that AGF II would be audited within 90 days of the fiscal year, were material misrepresentations; (4) there is a material dispute of fact over whether the representations in the 2011 and 2012 PPMs that

Anthony Cappaze was "Chief Underwriting Officer" and Ted Rea was "Executive Vice President of Business Development" were false or misleading; (5) there is a material dispute of fact over whether the representations in the October 8, 2013 email that AGF II's financial statements were "being done" by Evangelista and were "unexpectedly delayed" were false or misleading; and (6) there is a material dispute of fact regarding whether it was materially misleading for AGF II's monthly account statements not to include information about the quality of AGF II's investments.

Trial will therefore go forward on all of these issues, as well as any other issues properly before the Court.

I. BACKGROUND

A. Factual Background[1]

Johnson is and was the president and chief executive officer of AGF II, a company that raises capital from investors and uses the proceeds to provide loans to businesses. (PAA Resp.,[2] ¶ 2, 6; AGF II Resp.,[3] ¶ 2, 6.) AGF II serves as an "investor pool," meaning it receives money from investors in exchange for a preferred interest rate. (PAA Resp., ¶ 43; AGF II Resp., ¶ 43.) AGF II issued private placement memoranda in 2011 and 2012 (separately, the "2011 PPM" and the "2012 PPM"). (PAA Resp., ¶ 32; AGF II Resp., ¶ 32.) From June 1, 2012 to December 31, 2013, PAA sold $6.9 million worth of units in AGF II to investors; Allen, in particular, sold $4 million worth of AGF II units. (PAA Resp., ¶ 157–58; AGF II Resp., ¶ 157–58.) The SEC contends that in connection with raising money for AGF II, Defendants made various

---

[1] Unless otherwise noted, all factual statements are not in dispute.

[2] "PAA Resp.," refers to "Defendant Portfolio Advisors Alliance, Inc., Howard J. Allen III and Kerri I. Wasserman's Local Civil Rule 56.1 Counter-Statement in Opposition to Plaintiff's Motion for Summary Judgment," ECF No. 129.

[3] "AGF II Resp.," refers to "Defendant American Growth Funding II, LLC and Ralph C. Johnson's 56.1 Response and 56.1 Counterstatement in Opposition to Plaintiff's Motion for Summary Judgment," ECF No. 131.

representations or omissions to investors and potential investors that were false or misleading, including misrepresentations in the 2011 and 2012 PPMs.

### B. Relevant Procedural History

The SEC filed this action on February 3, 2016. (*See* ECF Nos. 1, 6.) On April 22, 2016, Defendants filed their Answers. (ECF Nos. 30, 32.) On June 9, 2017, after the discovery period ended, the SEC moved for summary judgment. (ECF No. 119.)

## II. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate where the moving party shows there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether there is a "genuine" dispute as to material fact, "a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003)). The burden of showing that "no [dispute as to any] material fact exists lies with the party seeking summary judgment." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

To demonstrate the existence of a genuine issue of material fact, "[t]he opposing party must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed. R. Civ. P. 56, setting forth specific facts showing there exists a genuine issue of material fact." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The nonmoving party successfully demonstrates a genuine issue of material fact if the record is such that "a reasonable jury could return a verdict for the nonmoving party." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)) (internal quotation marks omitted).

## B. Securities Fraud Standard

Section 10(b) of the Exchange Act and Rule 10b-5 "prohibit fraud in the purchase or sale of a security." *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (citation and internal quotation marks omitted). Those provisions are violated where a person "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *Id.*

"A fact is to be considered material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 518 (2d Cir. 1994). To determine whether a statement is materially misleading, the court must determine "whether defendants' representations, taken together and in context, would have misl[ed] a reasonable investor about the nature of the [securities]." *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) (quoting *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990)) (internal quotation marks omitted; brackets in original). On summary judgment, materiality can be determined as a matter of law "[o]nly if the established omissions are so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (citation and internal quotation marks omitted). "For an omission to be actionable, the securities laws must impose a duty to disclose the omitted information." *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002). The mere fact that information "may be relevant or of interest to a reasonable investor" does not require disclosure. *Id.*

Section 17(a) of the Securities Act prohibits fraud in the "offer or sale" of securities. *Frohling*, 851 F.3d at 136 (citation and internal quotation marks omitted). Its elements are "[e]ssentially the same" as the elements for claims under Section 10(b) and Rule 10b-5. *Id.*

4

(citation and internal quotation marks omitted; brackets in original). With respect to claims under sections 17(a)(2) or (3), however, proof of negligence is sufficient to establish liability. *SEC v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014).

## III. DISCUSSION

### A. Primary Liability

#### 1. Statements in the 2011 PPM that AGF II's Financial Statements Had Been Audited in the Past

The SEC contends that Johnson and AGF II (together, the "AGF Defendants") violated securities laws by stating in the 2011 PPM that AGF II had been audited in the past. (SEC Mem., ECF No. 120, at 13.) The AGF Defendants have admitted that no audit of AGF II's financial statements was completed until 2014. (SEC Ex. 17,[4] ¶ 35.)

Although the statement in the 2011 PPM that AGF II's "annual financial statements will continue to be audited" was indisputably false (*see* SEC Ex. 15, at 53), there is a dispute of material fact over whether that misrepresentation was material. Elsewhere in the document, the PPM states that AGF II is "newly formed and ha[s] no history of operations." (*Id.*, at 22; *see also id.*, at 5 (describing how the company "intends to make monthly distributions" in the future); *id.*, at 19 (stating that AGF II "expects to commence business as soon as possible following the initial closing"). A reasonable investor who read the whole document, "taken together and in context," may have understood that no audit of AGF II could have previously taken place and disregarded the audit language stating the contrary. *See Olkey*, 98 F.3d at 5. For this reason, "reasonable minds" could differ on whether the audit language in the 2011 PPM would have been important to—or instead ignored by—a reasonable investor. *See TSC Indus., Inc.*, 426 U.S.

---

[4] "SEC Ex." refers to exhibits attached to the declarations of John W. R. Murray, dated April 21, 2017, and July 31, 2017, ECF Nos. 108, 132.

at 450.

Accordingly, the Court DENIES summary judgment with respect to the SEC's claim that the AGF Defendants violated securities laws by making materially false statements in the 2011 PPM that AGF II had been audited in the past.

### 2. Statements in the 2012 PPM that AGF II's Financial Statements Had Been Audited in the Past

The SEC contends that the AGF Defendants, as well as Allen and PAA, misrepresented in the 2012 PPM that AGF II had been audited in the past. (SEC Mem., at 13.) Defendants have admitted that no audit of AGF II's financial statements was completed until 2014. (SEC Ex. 17, ¶ 35 (admission of AGF II & Johnson); SEC Ex. 2, ¶ 17 (admission of PAA, Allen & Wasserman).)

Although the statement in the 2012 PPM that AGF II's "annual financial statements will continue to be audited" was indisputably false (*see* SEC Ex. 16, at 53), there is a dispute of material fact over whether that misrepresentation was material. The 2012 PPM was issued on February 25, 2012. (SEC Ex. 16, at 1.) Allen declared under penalty of perjury that "each and every time [he] sold AGF II units commencing [at] the inception of 2012 going forward, [he] made a point of informing each potential investor that PAA was still waiting on audited financials from AGF II." (Allen Decl.,[5] ¶ 21.) He further stated that Kerri Wasserman instructed other PAA representatives to do the same and that "it is not possible for any [AGF] investor to have been misled." (*Id.*) A reasonable jury could believe Allen's statements and find that Allen and the other PAA representatives orally corrected any misrepresentation in the 2012 PPM about AGF II being audited in the past, making those misrepresentations not

---

[5] "Allen Decl." refers to the Declaration of Howard J. Allen in Opposition to Plaintiff's Motion for Summary Judgment, dated July 12, 2017, ECF No. 127.

"material."

The SEC claims that Allen's declaration should be disregarded because it is inconsistent with his prior testimony. (*See* SEC Reply, at 16.) In particular, the SEC notes that when Allen was asked, under oath, "Did you affirmatively inform investors from May or June 2012 that you were pitching the deal that language in the PPM was inaccurate?" he replied, "No, I did not." (SEC Ex. 8, at 195:22–25.) This testimony, however, is not inconsistent with Allen's declaration. A reasonable jury could believe both that Allen never told an individual investor "that language in the PPM was inaccurate," and that he did tell "each and every" potential investor that "PAA was still waiting on audited financials from AGF II."

Accordingly, the Court DENIES summary judgment with respect to the SEC's claim that the AGF Defendants, Allen, and PAA violated securities laws by making materially false statements in the 2012 PPM that AGF II had been audited in the past.

3. Statements in the Operating Agreement that AGF II's Financial Statements Would be Audited in the Future

The SEC contends that the AGF Defendants, PAA, and Allen misrepresented that AGF II would furnish "annual audited financial statements" of AGF II "within ninety (90) days of the end of the Fiscal Year." (SEC Mem., at 13–14; SEC Ex. 15, at 76; SEC Ex. 16, at 76.) These statements were contained in AGF II's Operating Agreement, which was attached to the 2011 and 2012 PPMs. (SEC Ex. 15, at 76; SEC Ex. 16, at 76.) As evidence that these statements were misrepresentations, the SEC cites testimony by Johnson and Allen that before AGF II's private placement, they intended to conduct an audit once AGF II "raised $5 million." (PAA Resp., ¶ 90; AGF II Resp., ¶ 90.)

Even if Defendants did intend to audit AGF II once it "raised $5 million," as opposed to "within (90) days of the end of the Fiscal Year" as stated in the Operating Agreement, there is a

material dispute of fact about whether this misrepresentation was material. The difference between conducting an audit 90-days after the fiscal year and conducting an audit after raising $5 million may not have mattered to a reasonable investor. Indeed, Allen testified that he believed AGF II would raise $5 million "within a year" and, in fact, began looking for an auditor for AGF II within a year. (SEC Ex. 8, at 62–63; PAA Resp., ¶ 229 (undisputed fact that Allen contacted an accounting firm in December 2011); Allen Decl., ¶ 6 (declaration by Allen that he started looking for an auditor in "late 2011").) Relying on this evidence, "reasonable minds" could differ on whether the misrepresentation in the Operating Agreement was material. *See TSC Indus., Inc.*, 426 U.S. at 450.

The decisions the SEC cites to the contrary are inapposite. *See SEC v. Jankovic*, No. 15-CV-1248 (KPF), 2017 WL 1067788, at *11 (S.D.N.Y. Mar. 21, 2017) (holding that misrepresentations were material because they were "legion," including false claims that a particular company had audited defendant and false claims that a former Congressman was on the company's board); *SEC v. Helms*, No. A-13-CV-01036 ML, 2015 WL 5010298, at *5 (W.D. Tex. Aug. 21, 2015) (holding that completely fabricated audit letter that included false valuation information was material misrepresentation), *adhered to on reconsideration*, No. A-13-CV-01036 ML, 2015 WL 6438872 (W.D. Tex. Oct. 20, 2015); *SEC v. Homestead Properties, L.P.*, No. SACV09-01331CJCMLGX, 2009 WL 5173685, at *3 (C.D. Cal. Dec. 18, 2009) (holding that lack of audit was material because an audit would have provided important information about a "drastic change in investment strategy").

Accordingly, the Court DENIES summary judgment with respect to the SEC's claim that the AGF Defendants violated securities laws by making materially false statements in AGF II's Operating Agreement that AGF II's financial statements would be audited within 90 days of the end of the fiscal year.

4. Statements in the 2011 and 2012 PPMs concerning AGF II's "Board of Managers"

The SEC contends that Defendants Johnson and AGF II made false representations in the 2011 and 2012 PPMs about AGF II's "Board of Managers." (SEC Mem., at 13.) Those PPMs stated that AGF II had a "Board of Managers" that included Anthony Cappaze as the "Chief Underwriting Officer" and that included Ted Rea as the "Executive Vice President of Business Development." (SEC Ex. 15, at 43–44; SEC Ex. 16, at 43–44.) In connection with the SEC's investigation, Mr. Cappaze and Mr. Rea testified that they did not hold these titles or positions. (SEC Ex. 70, at 39–40; SEC Ex. 72, at 153:25–154:3.) But Johnson testified during his deposition and in a declaration made under penalty of perjury, that Mr. Cappaze and Mr. Rea did, in fact, hold those positions. (AGF Ex.[6] 3, at 172–74; Johnson Decl., ¶¶ 35–36.)

Accordingly, because a reasonable jury could believe Johnson, summary judgment is DENIED with respect to this purported misrepresentation.

5. The October 8, 2013 Email

The SEC contends that the AGF Defendants, as well as Allen and PAA, made misrepresentations in an email sent to investors on October 8, 2013. (SEC Mem., at 13–14.) The purported misrepresentations were that audits of AGF II's 2011 and 2012 financial statements were "being done" and that there had been an "unanticipated delay" in auditing those statements. (*Id.*)

With respect to the purported misrepresentation that the financial statements were "being done," a reasonable jury could find that Defendants' statement was true when made. Johnson testified during his deposition that he hired Frazer, Evangelista & Co. ("Evangelista") as an

---

[6] "AGF Ex." refers to exhibits attached to the Declaration of Michael D. Handelsman in Opposition to the SEC's Motion for Summary Judgment, dated July 12, 2017, ECF No. 130.

auditor on October 1, 2013, and that he left a retainer check for Evangelista at that time. (AGF Ex. 5, at 194–95.) Johnson's deposition testimony is consistent with emails he sent Allen on October 1, 2013, stating that "AGF has engaged" Evangelista and that Evangelista "are auditing 2011 and 2011." (SEC Ex. 41.) Johnson further testified that he received a "verbal" commitment from Evangelista. (AGF Ex. 5, at 196–97; *see also* Johnson Decl., ¶ 44.) Based on this evidence, a reasonable jury could find that when the October 8 email was sent, Evangelista was auditing AGF II's 2011 and 2012 financial statements, and thus the statement in the October 8 email that this audit was "being done" was true.

The SEC argues that Johnson's deposition testimony should be rejected because it "contradicts his 2013 telephone recording of his discussion with Evangelista." (SEC Reply, at 9.) In that recording, Johnson tells Evangelista, "[M]y attorney is like, you know, what's going on with Evangelista. I said, I don't know, I haven't heard from him, I think he's still deciding." (SEC Ex. 89, at 75.) This audio recording, which is undated (*see* Supp'l Decl.,[7] ¶ 3), is not strictly inconsistent with Johnson's testimony that on October 1, 2013, Evangelista started auditing AGF II's financials. Any apparent contradiction is explained by Johnson's testimony that Evangelista "backed away" from the audit assignment after receiving a subpoena from the SEC. (*See* Ex. 4, at 103:8–17.) Relying on this evidence, a reasonable jury could believe that Evangelista began auditing AGF II's financials on October 1, 2013; that this fact was still true on October 8, 2013, when the email was sent out; and that only at some later date did Evangelista decide not to audit AGF II.

With respect to the statement that there was an "unanticipated delay" in finalizing the

---

[7] "Supp'l Decl." refers to the Supplemental Declaration of John W. R. Murray, Esq. in Further Support of Plaintiff Securities and Exchange Commission's Motion for Summary Judgment, dated July 31, 2017, ECF No. 132.

10

audits, a reasonable jury could find that Defendants were telling the truth. Johnson states in his declaration that he had previously discussed the audit with "a number of accountants" and that "the cost of the audit was a factor in the decision as to which auditor to retain." (Johnson Decl.,[8] ¶ 44.) It is undisputed that Allen contacted an accounting firm in late 2011. (SEC 56.1 Statement, ¶ 229; see also Allen Decl., ¶ 6 (declaration by Allen that he started looking for an auditor in "late 2011").) A reasonable jury could conclude from this evidence that Defendants had been trying to find an auditor, but were unexpectedly delayed.

Accordingly, SEC's motion for summary judgment with respect to the purported misrepresentations in the October 8, 2013 email is DENIED.

### 6. Monthly Account Statements

The SEC contends that Defendants Johnson and AGF II made misrepresentations in account statements given to investors. (SEC Mem., at 13.) The SEC claims, in particular, that these account statements were misleading because they did not disclose the performance of the underlying investments, some of which were underperforming. (SEC Mem., at 19.) Instead, the balances listed in these statements were based solely on the balances from the prior month, with 1% interest added. (SEC Ex. 4 (Johnson Dep. Tr.), at 259:23–260:14.) Johnson declared under penalty of perjury, however, that the sole purpose of the account statements was to provide each investor with his or her "capital account," meaning an accounting of the money owed by AGF II to the particular investor. (Johnson Decl., ¶ 39.) He further declared that the account statements accurately described the investors' capital accounts. (Id.) A reasonable jury could believe Johnson and find that the account statements were true and served their intended purpose.

Accordingly, SEC's motion for summary judgment with respect to the purported

---

[8] "Johnson Decl." refers to the Declaration of Ralph Johnson, dated July 12, 2017, ECF No. 126.

omissions in AGF II's monthly account statements is DENIED.

**B.     Control Person Liability**

The SEC contends that Johnson, Allen, and Wasserman are liable as control persons for the primary violations of AGF II and PAA. (SEC Mem., at 21–23.) Because this Court has denied summary judgment with respect to the purported primary violations of AGF II and PAA, it DENIES summary judgment with respect to control person liability of Johnson, Allen, and Wasserman.

**C.     Aiding and Abetting Liability**

The SEC contends that that Johnson, Allen, and Wasserman are liable for aiding and abetting the primary violations of AGF II, PAA, Johnson, and Allen. (SEC Mem., at 23–25.) Because this Court has denied summary judgment with respect to the purported primary violations of Johnson, AGF II, Allen, and PAA, it DENIES summary judgment with respect to aiding and abetting liability of Johnson, Allen, and Wasserman.

**IV.     CONCLUSION**

In conclusion, the SEC's motion for summary judgment is DENIED, because (1) there is a material dispute of fact over whether the representations in the 2011 PPM that AGF II had been audited in the past were material misrepresentations; (2) there is a material dispute of fact over whether the representations in the 2012 PPM that AGF II had been audited in the past were material misrepresentations; (3) there is a material dispute of fact over whether the representations in the Operating Agreement attached to the 2011 and 2012 PPMs that AGF II would be audited within 90 days of the fiscal year, were material misrepresentations; (4) there is a material dispute of fact over whether the representations in the 2011 and 2012 PPMs that Anthony Cappaze was "Chief Underwriting Officer" and Ted Rea was "Executive Vice President of Business Development" were false or misleading; (5) there is a material dispute of fact over

whether the representations in the October 8, 2013 email that AGF II's financial statements were "being done" by Evangelista and were "unexpectedly delayed" were false or misleading; and (6) there is a material dispute of fact regarding whether it was materially misleading for AGF II's monthly account statements not to include information about the quality of AGF II's investments.

The Clerk of Court is directed to terminate the motion at ECF No. 119.

The parties shall, by April 27, 2018, submit to the Court a joint letter outlining steps that need to be taken before the case is Ready for Trial. The parties must file a joint pretrial order by May 11, 2018. By that date, the parties shall also advise the Court whether they consent to trial of this case before a Magistrate Judge. The case will be deemed Ready for Trial on May 18, 2018. Counsel are directed to comply with this Court's Individual Rules.

SO ORDERED.

Dated: New York, New York
March 29, 2018

_____
KIMBA M. WOOD
United States District Judge