**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
:
**SECURITIES AND EXCHANGE**           :
**COMMISSION,**                       :
                                      :        **No. 16 Civ. 828 (KMW)**
                  **Plaintiff,**    :
                                      :        **ECF Case**
       **v.**                 :
                                      :
**AMERICAN GROWTH FUNDING II, LLC,**  :
**PORTFOLIO ADVISORS ALLIANCE, INC.,** :
**RALPH C. JOHNSON,**                 :
**HOWARD J. ALLEN III,**              :
**and**                               :
**KERRI L. WASSERMAN,**               :
                                      :
                  **Defendants.**  :
-------------------------------------------------------------x

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM
OF LAW IN SUPPORT OF ITS SECOND OMNIBUS MOTION *IN LIMINE*, TO
PRECLUDE EVIDENCE AND ARGUMENT CONCERNING INVESTOR
SOPHISTICATION AND GENERALIZED RISK DISCLOSURES, AND TO ADMIT
<u>EVIDENCE OF MOTIVE AND CO-CONSPIRATOR STATEMENTS</u>**

SECURITIES AND EXCHANGE COMMISSION
    Alexander M. Vasilescu
    Richard Hong
    Jorge G. Tenreiro
    Karen Lee
New York Regional Office
200 Vesey Street
New York, New York 10281
(212) 336-9145 (Tenreiro)

*Attorneys for Plaintiff*

March 8, 2019

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..........................................................................................**iii**

**PRELIMINARY STATEMENT** ................................................................... **1**

**FACTUAL BACKGROUND** ......................................................................... **3**

**ARGUMENT** .................................................................................................. **5**

    A.    Evidence of Victims' Status as Accredited Is Irrelevant and Prejudicial........................ 5

    B.    Boilerplate Cautionary Disclosures Are Irrelevant and Prejudicial ................................. 8

    C.    The Large Proportion of PAA's Revenues Derived from PAA is Relevant to Defendants' Scienter ........................................................... 10

    D.    Johnson's Statements to the SEC are Admissible against Defendants as Statements of a Co-Conspirator ...................................................... 11

**CONCLUSION** .......................................................................................... **14**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Braunstein v. Benjamin Berman, Inc.*, No. 89 Civ. 5344 (DRD), 1990 WL 192547
    (D.N.J. Sept. 12, 1990) ................................................................................................... 6

*Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250 (S.D.N.Y. 2015) ..................................... 5

*In re 650 Fifth Ave.*, No. 08 Civ. 10934 (KBF), 2017 WL 6419022
    (S.D.N.Y. May 30, 2017) ............................................................................................... 5

*In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189 (S.D.N.Y. 2004) ........................... 8, 9

*McCann v. Hy-Vee, Inc.*, 663 F.3d 926 (7th Cir. 2011) ................................................................ 7

*MidAmerica Fed. Sav. and Loan Ass'n v. Shearson/American Express, Inc.*,
    886 F.2d 1249 (10th Cir. 1989) ...................................................................................... 6

*Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2 (2d Cir. 1996) ............................................... 8

*P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004) ............................................... 8

*Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996) ....................................................................... 5

*SEC v. Am. Growth Funding II, LLC*, No. 16 Civ. 828 (KMW), 2018 WL 1135564
    (S.D.N.Y. Mar. 1, 2018) ............................................................................................... 13

*SEC v. Am. Growth Funding II, LLC*, No. 16 Civ. 828 (KMW), 2018 WL 6322145
    (S.D.N.Y. Dec. 4, 2018) ................................................................................................. 1

*SEC v. Blavin*, 760 F.2d 706 (6th Cir. 1985) ............................................................................. 7

*SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475 (S.D.N.Y. 2002) ........................................... 6

*SEC v. Goldstone*, No. 12 Civ. 257 (JOB), 2016 WL 3654273 (D.N.M. June 13, 2016) ........... 10

*SEC v. ITT Educ. Servs., Inc.*, No. 15 Civ. 758 (JMS), 2018 WL 3008632
    (S.D. Ind. June 15, 2018) ............................................................................................. 11

*SEC v. Lee*, 720 F. Supp. 2d 305 (S.D.N.Y. 2010) ..................................................................... 7

*SEC v. Meltzer*, 440 F. Supp. 2d 179 (E.D.N.Y. 2006) ............................................................ 8, 9

*SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233 (11th Cir. 2012) .......................................... 7

*SEC v. N. Am. Research & Dev. Corp.*, 424 F.2d 63 (2d Cir. 1970) ............................................ 6

*SEC v. Rana Research, Inc.*, 8 F.3d 1358 (9th Cir. 1993) ............................................................ 7

*SEC v. Thompson*, 238 F. Supp. 3d 575 (S.D.N.Y. 2017) ........................................................... 8

*SEC v. True N. Fin. Corp.*, No. 10 Civ. 3995 (DWF), 2013 WL 4781037
    (D. Minn. Sept. 6, 2013) ............................................................................................... 8

*SEC v. U.S. Envtl.*, No. 94 Civ. 6608 (PKL), 2003 WL 21697891
    (S.D.N.Y. July 21, 2003) .............................................................................................. 13

**Page(s)**

*United States v. Delligatti*, No. 15 Cr. 491 (KBF), 2018 WL 1033242
(S.D.N.Y. Feb. 23, 2018) ............................................................................... 11

*United States v. Gewin*, 471 F.3d 197 (D.C. Cir. 2006) ...................................... 11

*United States v. Letourneau*, No. 11 Cr. 182 (HDL), 2013 WL 3834410
(N.D. Ill. July 24, 2013) .................................................................................. 8

*United States v. Litvak*, 889 F.3d 56 (2d Cir. 2018) ............................................ 7

*United States v. Namer*, 149 F. App'x 385 (6th Cir. 2005) ................................. 7

*United States v. Nelson*, 732 F.3d 504 (5th Cir. 2013) ....................................... 11

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006) .................................. 11

*United States v. Romano*, 849 F.2d 812 (3d Cir. 1988) ....................................... 5

*United States v. Russo*, 302 F.3d 37 (2d Cir. 2002) ........................................... 11

*United States v. Tracy*, 12 F.3d 1186 (2d Cir. 1993) ................................... 11, 13

*United States v. Ulbricht*, 79 F. Supp. 3d 466 (S.D.N.Y. 2015) ........................ 12

*Wright v. National Warranty Co*., 953 F.2d 256 (6th Cir. 1992) .......................... 6

**Rules**

Fed. R. Evid. 401 ....................................................................................... 1, 5, 7

Fed. R. Evid. 402 .......................................................................................... 1, 5

Fed. R. Evid. 403 ......................................................................................... passim

Fed. R. Evid. 801(d)(2)(E) ..................................................................... 11, 12, 13

**Regulations**

17 C.F.R. § 230.500 ........................................................................................... 5

17 C.F.R. § 230.501(a) ....................................................................................... 5

Plaintiff Securities and Exchange Commission ("Commission" or "SEC") respectfully submits this memorandum of law in support of its second omnibus motion *in limine* under Rules 401, 402, and 403 of the Federal Rules of Evidence.  The SEC seeks (a) to preclude Defendants Portfolio Advisors Alliance, Inc. ("PAA"), Howard J. Allen III ("Allen"), and Kerri Wasserman ("Wasserman") from offering at trial evidence or argument regarding (i) investors' status as accredited investors; and (ii) cautionary language and/or generalized risk disclosures in the private placement memoranda ("PPM") for American Growth Funding II, LLC ("AGF II"); and (b) to admit evidence regarding (i) Defendants' motive for engaging in the charged conduct and (ii) out of court statements by Defendants' co-conspirator Ralph Johnson ("Johnson").

## PRELIMINARY STATEMENT

Defendants seek to prolong this trial and unduly confuse the Jury by introducing evidence that the victims who invested in the AGF II securities Defendants sold were "accredited investors."  But this enforcement action is about what *the Defendants* told investors, what *the Defendants* knew to be the truth when they communicated or dealt with investors, and what is material to a *reasonable* investor.  A victim's level of sophistication is much like the pecuniary gains or losses the Court has already excluded from this case—"not relevant."  *SEC v. Am. Growth Funding II, LLC*, No. 16 Civ. 828 (KMW), 2018 WL 6322145, *1 (S.D.N.Y. Dec. 4, 2018).  Evidence of a victim's status as "accredited" is but a variant on the "blame the victim" theme, and is therefore similarly inadmissible under Rule 402 of the Federal Rules of Evidence.

Moreover, even if such evidence were remotely relevant, it would unnecessarily confuse and prolong the trial, by forcing the SEC to explain to the Jury that the securities laws impose the same anti-fraud obligations on broker-dealers regardless of the accredited status of their customers, and explain the contours of the exceptions to the securities registration requirements.

As may be Defendants' goal, this show will confuse the Jury about the elements to be proven and invite it to view the SEC's case under the improper prism of the status of Defendants' victims.

Defendants next seek to waste the Jury's time by invoking the inapplicable "bespeaks caution" doctrine and pouring over every inch of the PPMs looking for generalized disclosures about the risks of investing in AGF II, such as, for example, the obvious risk of losing money. But the SEC does not allege that Defendants failed to properly disclose investing risks. This case is about the *affirmative misrepresentations* Defendants made in the PPMs about whether AGF II had been audited. No boilerplate cautionary language can cure misstatements in a PPM because risk disclosures do not warn investors that their broker may lie to them; stated differently, generalized risk disclosures do not provide a speaker license to mislead. To avoid protracting the trial, the Court should exclude this irrelevant and unduly prejudicial evidence.

Finally, Defendants have sought to prolong this trial by refusing to stipulate to factually indisputable and relevant facts, such as the proportion of PAA's revenues derived from sale of AGF II units. Defendants' opposition rests on two untenable propositions: that PAA's revenues are not relevant and that Johnson's out of court statements are inadmissible against them.

Both positions are wrong. First, the proportion of PAA's revenues derived from AGF II, which Defendants' expert characterized as "large," is directly relevant to Defendants' scienter. A reasonable juror may infer that Defendants had a reason to mislead investors into purchasing AGF II units: to not lose a significant part of their business. Second, because the record shows a common enterprise or partnership between Johnson and Defendants, most of Johnson's out of court statements are not hearsay under Rule 801(d)(2)(E) of the Federal Rules of Evidence. To preserve judicial resources and the Jury's time during trial, the SEC respectfully requests pre-trial rulings that both types of evidence are relevant and admissible against Defendants.

## FACTUAL BACKGROUND

The stipulation meet and confer process ordered by the Court helped crystallize four ways in which Defendants appear to seek to needlessly prolong this trial with irrelevant evidence, confuse the issues for the Jury, and unduly prejudice the SEC.

First, in connection with expert discovery, the SEC disclosed that it would offer at trial a broker-dealer expert, Robert Lowry, to testify to an issue at the heart of this case: the standard of care that Defendants were obligated to adhere to in recommending to their clients investments in AGF II.  *See generally* Dec. of Alexander Vasilescu, dated Mar. 8, 2019 ("Vasilescu Dec."), Ex. 5 (Excerpts of Expert Rep. of Robert Lowry, dated Feb. 3, 2017 ("Lowry Rep.")).  Specifically, Lowry would testify that Defendants' duty to perform "appropriate due diligence" on AGF II derives from FINRA-imposed obligations that brokers engage in "suitability" analysis for the securities they recommend.  *See id.* at 7-8.  The SEC sought to reduce the length of Lowry's testimony, however, by proposing stipulations to these fundamental broker-dealer suitability duties and the concomitant due diligence obligations.  *See* Pl.'s Proposed Stipulations, dated Feb. 1, 2019 (D.E. 218) ("SEC Stips.") ¶¶ 356-363, 367-369.

Defendants responded that they would not stipulate to these bedrock duties unless the SEC stipulated that AGF II units were "offered only to 'accredited investors.'"  Vasilescu Dec., Ex. 15 (Defs.' Proposed Stipulations of Facts, dated Feb. 15, 2019 ("PAA Stips.")) at ¶¶ 13, 28, 30.  The parties were thus unable to reach agreement, and Defendants then indicated they would seek to introduce evidence of investor accreditation at trial to confront any investor who may testify, and should Lowry testify regarding a broker's suitability-based due diligence obligations.

Second, Defendants filled a significant portion of their proposed stipulations with excerpts from the "Risk Factors" and "Conflicts of Interest" sections of the PPMs.  *See* PAA

Stips. ¶¶ 11, 12, 14, 15, 16, 26, 27, 29, 31, 32, 33.  The disclosures are interspersed in the PPMs, include "seven-page [sic] section[s]," *id.* ¶ 15, and discuss "general risks associated with the [loans AGF II] intends to fund, the risks associated with a private offering and other risks." Vasilescu Dec., Ex. 6 (Excerpts of AGF II PPM, dated Feb. 11, 2011 ("2011 PPM")) at 26-34; *id.*, Ex. 7 (Excerpts of AGF II PPM, dated Feb. 25, 2012 ("2012 PPM")) at 26-34.  Others state that (a) "[i]nvestment in [AGF II] . . . involves a high degree of risk," 2011 PPM at 4; 2012 PPM at 4; (b) the investment "is speculative," 2011 PPM at 6; 2012 PPM at 6; and (c) AGF II's manager "may enter into a co-investment or joint venture arrangements."  2011 PPM at 33.

Third, further seeking to minimize the time Lowry spends on the stand, the SEC sought to stipulate to the total revenue Defendant PAA derived from selling AGF II units, SEC Stips. ¶ 370, and to the proportion of PAA's yearly revenues that these amounts represented—nearly 50% by the end of 2012.  *Id.* ¶ 371.  Obviating the need for Lowry to explain the routine calculations he performed would save a significant amount of trial time; nevertheless, Defendants agreed to stipulate to the total revenue only.  Defendants' reasoning is that the percentage of PAA's revenue derived from AGF II is not relevant.

Fourth, the SEC also sought stipulations regarding background evidence that should not be reasonably in dispute, including AGF II's office address, *id.* ¶ 15, Johnson's status as the sole employee of AGF II and other AGF entities, *id.* ¶ 17, the history of other AGF-related entities, *id.* ¶¶ 33-39, 41, and the loan structure between AGF II and AGF LLC, *id.* ¶¶ 52-57.  In support of these proposed stipulations, the SEC pointed to Johnson's unrebutted testimony and/or to his and Defendants' statements in the AGF II PPMs.  Nevertheless, Defendants refused to stipulate because, in their view, the evidence cited in support of these proposed stipulations constitutes inadmissible hearsay of a non-party witness (as Johnson has settled with the SEC).

## ARGUMENT

Motions *in limine* screen irrelevant and unduly prejudicial evidence and argument from the Jury, *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988), and eliminate unfounded arguments to avoid unneeded delay.  *See, e.g.*, *In re 650 Fifth Ave.*, No. 08 Civ. 10934 (KBF), 2017 WL 6419022, *2 (S.D.N.Y. May 30, 2017) (precluding as a "waste of time" argument on issue for which propounding party had "come up largely short" with evidentiary proffer).  Ruling on evidentiary disputes in advance of trial when it is clear that an issue will arise prevents interruptions during trial.  *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

Under Rule 401 of the Federal Rules of Evidence, "relevant evidence" is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" if "the fact is of consequence in determining the action."  Under Rule 402, "[i]rrelevant evidence is not admissible."  Even relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "Evidence is considered prejudicial if it 'involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'"  *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (citation omitted).

### A.   Evidence of Victims' Status as Accredited Is Irrelevant and Prejudicial

Federal regulations define "accredited investors," as relevant here, to include individuals of high net worth.  *See generally* 17 C.F.R. § 230.501(a)(5), (6).  Whether an investor is "accredited" is relevant to determine, for example, whether an offer or sale may be made without registering the offering with the SEC.  *See, e.g.*, *id.* § 230.500.  It is undisputed that the registration status of AGF II is not at issue here.

An investor's status as accredited, by contrast, is not an element of or in any way relevant to the SEC's fraud claim.  The issues for the Jury to determine remain the same as when the SEC brought its first motion in limine (to exclude evidence of pecuniary gains, another type of evidence aimed at blaming investors).  Namely, the Jury must determine whether Defendants' statements about AGF II's audits would alter the total mix of information available to investors, and whether Defendants acted with scienter.  Evidence of investor sophistication is irrelevant and, therefore, inadmissible, for the same reason evidence of investor loss is: reliance and loss causation are not elements of an SEC fraud enforcement action.  SEC Mem. of Law in Supp. of Mot. *In Lim.*, dated July 27, 2018 (D.E. 167) ("SEC MIL") at 5 (citing *SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475, 490-91 (S.D.N.Y. 2002) (SEC not required to prove loss causation or reliance) (quoting *SEC v. N. Am. Research & Dev. Corp.*, 424 F.2d 63, 84 (2d Cir. 1970))).

At least two Court of Appeals have considered this issue and recognized that, because evidence of sophistication is relevant only to whether the investor justifiably relied on a false statement, it is irrelevant to fraud claims for which there is no need to show reliance.  In *Wright v. National Warranty Co.*, for example, the Sixth Circuit held, relying on the Tenth Circuit's identical holding, that in an action under Section 12(2) of the Securities Act, which "has no requirement of justifiable reliance," a "purchaser's investment sophistication is immaterial," and that, accordingly, such evidence was properly excluded.  953 F.2d 256, 262 (6th Cir. 1992) (citing *MidAmerica Fed. Sav. and Loan Ass'n v. Shearson/American Express, Inc.*, 886 F.2d 1249, 1256 (10th Cir. 1989)); *see also Braunstein v. Benjamin Berman, Inc.*, No. 89 Civ. 5344 (DRD), 1990 WL 192547, *15 (D.N.J. Sept. 12, 1990) (citing *MidAmerica* for identical holding).

The same result follows in an SEC action, for which justifiable reliance is indisputably not an element.  *See* SEC MIL at 5.  Thus, in an indistinguishable case, the Sixth Circuit affirmed

6

a district court's decision to exclude evidence that investors into private placements were "sophisticated 'accredited investors,'" "because none of the charges against [the defendant] required proof of reliance." *United States v. Namer*, 149 F. App'x 385, 401 (6th Cir. 2005).[1]

In light of the foregoing, Defendants cannot proffer any relevance of evidence of investor sophistication. Defendants cannot argue, for example, that it is probative of materiality—the Second Circuit has ruled that out. *See United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018) ("A finding of materiality does not require proof of 'actual reliance.' Materiality requires proof only that a reasonable investor would deem the content of a misstatement a substantial factor to be considered in the making of the particular investment decision.") (citation omitted). Defendants' only proffered argument for admissibility—that jurors could draw an improper inference about the suitability of AGF II *to an investor* from Lowry explaining the basic fact that brokers have suitability duties—cannot bear the weight Defendants place upon it. The SEC will invite no such inference, and will argue instead that the Jury should draw an inference about *Defendants' due diligence* and meeting of the standard of care.

Moreover, evidence of investor sophistication, irrelevant under Rule 401, is *a fortiori* unduly prejudicial and wasteful, and therefore additionally excludable, under Rule 403. By pointing to their victims' net worth and experience in investing, Defendants are inviting the Jury to conclude that sophisticated investors "should have found out the truth" about Defendants'

---

[1]     *See also SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1244 (11th Cir. 2012) ("'[j]ustifiable reliance' . . . is not an element of an SEC enforcement action"); *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 931 (7th Cir. 2011) ("the SEC can bring an enforcement action . . . without anyone having relied on a misrepresentation"); *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1363-64 (9th Cir. 1993) (reliance is not an element of a Section 10(b) action by the SEC); *SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985) (same); *SEC v. Wyly*, 71 F. Supp. 3d 399, 405 (S.D.N.Y. 2014) ("Unlike private plaintiffs, who must demonstrate that the defendants' misstatements or omissions were a proximate cause of their injury at the liability stage, the SEC has no such burden.").

misrepresentations and/or had "no one to blame but themselves" for investing in AGF II.  The Jury could also impermissibly infer victims do not care about their investment in AGF II because of their higher net worth.  Accordingly, and as noted in the SEC's first omnibus motion *in limine*, district courts routinely exclude as prejudicial evidence that tends to implicate the investors' lack of diligence.  Blaming the victim is not a defense.  *See* SEC MIL at 5-6.[2]  Discussing the sophistication of investors or their status as accredited under the law will lengthen an already lengthy trial, waste the Jury's and the Court's time, and distract the Jury from the real issues at hand.  The Court should exclude evidence of investor sophistication.

### B.       Boilerplate Cautionary Disclosures Are Irrelevant and Prejudicial

The "bespeaks caution" doctrine applies only to statements that are forward-looking, *SEC v. Thompson*, 238 F. Supp. 3d 575, 603 (S.D.N.Y. 2017), and then only if the "speaker 'warns of the specific contingency that lies at the heart of the alleged misrepresentations.'"  *Id.* (quoting *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004)).  Thus, "[g]eneralized disclosures of amorphous risks will not shield defendants from liability as the cautionary language must be 'too prominent and specific to be disregarded' and must 'warn investors of exactly the risk that plaintiffs claim was not disclosed.'"  *In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 211-12 (S.D.N.Y. 2004) (quoting *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996)); *see also SEC v. Meltzer*, 440 F. Supp. 2d 179, 191-92 (E.D.N.Y. 2006) (same).  As the Second Circuit explained, "cautionary language associated with the 'bespeaks caution' doctrine is aimed at warning investors that bad things may come to pass—in dealing with the contingent or unforeseen future."  *P. Stolz Family P'Ship*, 355 F.3d at 97.

---

[2]       *See also SEC v. True N. Fin. Corp.*, No. 10 Civ. 3995 (DWF), 2013 WL 4781037, *2 (D. Minn. Sept. 6, 2013) (excluding evidence of "lack of diligence" by the investors); *United States v. Letourneau*, No. 11 Cr. 182 (HDL), 2013 WL 3834410, *3 (N.D. Ill. July 24, 2013) (granting a motion *in limine* about the victim's "misconduct or negligence").

In this case, the SEC does not claim that any particular risk of investing in AGF II was not disclosed.  The SEC alleges, instead, that the two PPMs *affirmatively misrepresented* the then-current status of AGF II's audits by falsely stating that AGF II's financial statements *had been audited* and would "continue to be audited by an independent firm of certified public accountants," 2011 PPM at 53; 2012 PPM at 53.  The SEC also alleges that, in Exhibit A to the PPMs, Defendants misrepresented that AGF II's financial statements would be delivered within ninety (90) days of the end of the calendar year, to the many investors who received the PPM *after* that time had elapsed without AGF II being audited.  *See* 2011 PPM at 76; 2012 PPM at 76.

There is no cautionary language or risk disclaimer in the PPMs that "warn[s] investors of exactly" the truth the SEC claim is at issue, *In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d at 212 (citation omitted), namely, that there was no audit of AGF II's financial statements. The PPMs' boilerplate cautionary language and generalized disclosures say nothing about the status of audits and are irrelevant.  *See Meltzer*, 440 F. Supp. 2d at 191 ("cautionary language in securities offerings is just about universal . . . But generalized disclosures of amorphous risks will not shield defendants from liability") (internal citations and quotation marks omitted).

Beyond irrelevance, any evidence and/or argument regarding generalized risk disclaimers should also be excluded under Rule 403.  The AGF II PPMs, like most offering materials, are replete with generalized, boilerplate disclosures of unknown, future risks with which Defendants seek to distract the Jury.  If Defendants are permitted to do so, the Jury may be subjected to hours (or even days) of reviewing dense, legal language that has no bearing on any issue in this case, thereby needlessly prolonging the trial.  Assuming *arguendo* that there were some, limited probative value for generalized risk disclaimers to this case, such value would be more than substantially outweighed by the dangers of Rule 403 seeks to forestall: "unfair prejudice,

confusing the issues, misleading the jury, undue delay, [and] wasting time."  The Court should

not countenance this unnecessary extension of the trial and rule this evidence inadmissible.

### C.    The Large Proportion of PAA's Revenues Derived from PAA is Relevant to Defendants' Scienter

Defendants' own expert admitted that in analyzing PAA's due diligence he considered

the portion of PAA's business derived from AGF II unit sales, which he concluded "was in the

twenty to forty percent neighborhood," a proportion he agreed was a "large percentage" of

PAA's revenue.  *See* Vasilescu Dec., Ex. 4 (Excerpts of Dep. of Richard T. Chase, dated Apr. 21,

2017) at 176:11—177:3; *see also id.*, Lowry Rep. at 20 & Summ. Ex. 5 (commissions from AGF

II constituted 48.97% of PAA's income in late 2012).

In light of this concession, it is remarkable for Defendants to insist that this evidence is

irrelevant to this case.  It is straightforward that understanding the motives of a defendant

accused of fraud may help a jury make a determination about scienter.  In turn, the compensation

a defendant received from an allegedly fraudulently scheme is probative of motive.  The reasons

for this are obvious here: the significant amount of PAA's fees derived from AGF II permit the

reasonable inference that Defendants had a reason to lie and/or to look the other way when others

lied.  This, in turn, permits the Jury to conclude that Defendants' acted intentionally or

recklessly, and not out of innocent mistake or negligence.

Unsurprisingly, courts routinely turn back attempts to exclude evidence of a defendant's

compensation in fraud cases.  In *SEC v. Goldstone*, for example, the district court ruled such

evidence admissible, reasoning that defendants "might have been tempted to fudge the truth in a

tough situation . . . to keep their income stream intact.  Some people do not tell the truth and

cross the line when times get tough.  The high salaries suggest a motive, in that [defendants] had

skin in the game."  No. 12 Civ. 257 (JOB), 2016 WL 3654273, *16 (D.N.M. June 13, 2016); *see*

10

*also United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006) (permitting evidence of "substantial salary [because it] established a motive" to obstruct an investigation); *SEC v. ITT Educ. Servs., Inc.*, No. 15 Civ. 758 (JMS), 2018 WL 3008632, *7 (S.D. Ind. June 15, 2018) (permitting evidence of "salaries [and] bonuses" as "relevant to Defendants' motive").

The Court should follow this persuasive line of cases. Because Defendants' motives and revenue from AGF II will recur at trial, and could appear as early as the SEC's opening statement, the Court should rule in advance of trial that this evidence is relevant and admissible.

**D.     Johnson's Statements to the SEC are Admissible against Defendants as Statements of a Co-Conspirator**

Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, a statement "offered against an opposing party . . . [that] was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. For this exception to apply, the proponent must show by a preponderance of the evidence (1) the existence of the conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made during and in furtherance of the conspiracy. *See United States v. Delligatti*, No. 15 Cr. 491 (KBF), 2018 WL 1033242, *4 (S.D.N.Y. Feb. 23, 2018) (citing *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993)). The exception "has its roots in the law of agency" such that "when two people enter into a joint venture of conspiratorial nature, the actions and utterances of either done in furtherance of that conspiracy are deemed authorized by the other." *United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002). Importantly, the Second Circuit has explained that the "partnership" or "joint venture . . . need not be criminal at all." *Id.*[3] Further, there is no

---

[3]     *See also United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006) (explaining that the 801(d)(2)(E) exception is "based on concepts of agency and partnership law and [is] applicable in both civil and criminal trials," such that "when two or more individuals are acting in concert toward a common goal, the out-of-court statements of one . . . are admissible against the others") (citation omitted); *United States v. Nelson*, 732 F.3d 504, 516 (5th Cir. 2013) ("A conspiracy for

requirement that person to whom the statement is made be a member of the conspiracy.  *United States v. Ulbricht*, 79 F. Supp. 3d 466, 490 (S.D.N.Y. 2015).

In this case, the SEC is likely to call witnesses who will testify as to statements Johnson made to them in connection with, for example, seeking an audit of AGF II.  Stuart Bender, for instance, has already attested that Johnson told him he did not want Bender to audit AGF II.  *See* Vasilescu Dec., Ex. 17 (Dec. of Stuart Bender, dated Aug. 4, 2015) ¶¶ 5-6.  And while the SEC expects Johnson to testify live at trial, his prior under oath statements in this litigation could, depending on his testimony, be offered for the truth of the matter therein asserted.

There can be no doubt that Johnson's statements offered against Defendants meet the first two requirements of Rule 801(d)(2)(E).  Defendants concede that "AGF II retained PAA to sell its AGF II securities," and that Allen and Wasserman were principals of PAA.  *See* Defs.' Local Civil Rule 56.1 Counter-Statement in Opp'n To Pl.'s Mot. for Summ. J., dated July 12, 2017 (D.E. 129) ¶¶ 15, 16, 23.  Indeed, Johnson and Allen were partners in overseeing AGF II.  *See* Vasilescu Dec., Ex. 12 (Excerpts of Dep. of Howard Allen, dated Jan. 11, 2017) at 49:7—50:15 (Allen indirectly owned 49% of AGF II's management entity, Johnson owned 51%).  Defendants have further admitted that Allen agreed with Johnson regarding the need to complete AGF II's audits.  *See, e.g.*, *id.* ¶ 93.  Finally, Johnson has proffered and is expected to testify that he, Allen, and PAA worked together on the PPMs.  Accordingly, the existence of a common enterprise in which both Johnson and Defendants participated is established by a preponderance of the

---

the purpose of [Rule 801(d)(2)(E)] need not be unlawful; the statement may be made in furtherance of a 'lawful joint undertaking.'  A conspiracy may be shown 'merely by engaging in a joint plan[] . . . that was non-criminal in nature.'  Thus, 'a statement is not hearsay if it was made during the course and in furtherance of a common plan or endeavor with a party.'" (citations omitted)).

evidence, and the Court should so rule in advance of trial. *Tracy*, 12 F.3d at 1199 ("[S]tatements proffered as coconspirator statements may be admitted in evidence on a conditional basis.").

As to whether a particular statement meets the other two prongs, the Court may at least preliminarily rule that statements such as those made by Johnson respecting why he did not want Bender to audit AGF II audit and those made by Johnson to the SEC where made during and in furtherance of the common enterprise between Johnson and Defendants.

For example, the Court already ruled that the SEC's evidence in this case supports the inference that Johnson "attempted to avoid a proper audit by hiring an unscrupulous auditor," and Johnson's "concern[] about disclosing [AGF LLC's] financials . . . makes it more likely that [Johnson] would lie about having conducted an audit." *SEC v. Am. Growth Funding II, LLC*, No. 16 Civ. 828 (KMW), 2018 WL 1135564, *3 (S.D.N.Y. Mar. 1, 2018). As set forth above, the evidence also permits an inference that Defendants had motives to lie to investors about AGF II having been audited. *See supra* Part C. Accordingly, the preponderance of the evidence already shows that Johnson and Defendants may have been similarly motivated when making statements to others about AGF II's audits. *See, e.g.*, *SEC v. U.S. Envtl.*, No. 94 Civ. 6608 (PKL), 2003 WL 21697891, *9 n.2 (S.D.N.Y. July 21, 2003) (permitting witness to testify as to what defendant's co-conspirator said to the witness as non-hearsay under Rule 801(d)(2)(E)).

The Court should reach the same conclusion with respect to Johnson's statements to the SEC. Because both Johnson and Defendants were, at the time of Johnson's statements, co-defendants in this action, the two had an obvious, common goal—to cover up the fraud and defeat the SEC's charges against them. Accordingly, Johnson's statements in this litigation are admissible for the truth of the matter asserted against Defendants, if offered by the SEC.

## **CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court grant its omnibus motion *in limine* in its entirety.

Dated: March 8, 2019
New York, New York

SECURITIES AND EXCHANGE
COMMISSION

By: _____
Jorge G. Tenreiro
Alexander M. Vasilescu
Richard Hong
Karen Lee
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-9145 (Tenreiro)

*Attorneys for Plaintiff*