UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                    :
SECURITIES AND EXCHANGE                             :
COMMISSION,                                         :
                                                    :       No. 16 Civ 00828 (KMW)
                              Plaintiff,            :
                                                    :       ECF Case
              v.                                    :
                                                    :
AMERICAN GROWTH FUNDING II, LLC,                    :
PORTFOLIO ADVISORS ALLIANCE, INC.,                  :
RALPH C. JOHNSON,                                   :
HOWARD J. ALLEN III                                 :
and                                                 :
KERRI L. WASSERMAN                                  :
                                                    :
                              Defendants.           :
------------------------------------------------------------------x


PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY MEMORANDUM IN FURTHER SUPPORT OF *IN LIMINE* MOTION TO
<u>PRECLUDE RICHARD CHASE'S EXPERT TESTIMONY</u>


Alexander M. Vasilescu
Richard Hong
Jorge Tenreiro
Karen M. Lee
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0178 (Vasilescu)

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION .......................................................................................................1

II.   ARGUMENT ..............................................................................................................2

    A.  Defendants Fail to Provide Any Legitimate Basis to Admit Chase's Opinions on
        the Defendants' Scienter ....................................................................................2

    B.  Defendants Fail to Provide Any Proper Basis to Admit Chase's Opinions on How
        the Audit Language in the 2011 and 2012 AGF II PPMs Should Be Interpreted ...3

    C.  Defendants Fail to Provide Any Permissible Basis to Admit Chase's Opinions on
        Case Law, the Charges Against the Defendants and Other Areas of Law .............6

    D.  Defendants Fail to Specify Any Factual Basis or Analysis to Admit Chase's
        Opinions that PAA Performed Proper Due Diligence ............................................8

    E.  Defendants Fail to Provide Any Legitimate Basis to Admit Chase's Opinions on
        Interpretation of Other Evidence .........................................................................9

III.  CONCLUSION .........................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993)..............................................1, 2

*Fed. Housing Fin. Agency v. Nomura Holding Am., Inc.*, No. 11 cv 6201 (DLC), 2015 WL
 353929 (S.D.N.Y. Jan. 28, 2015)..................................................................................................3

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp.2d 531 (S.D.N.Y. 2004) .....................................10

*Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016)..........................................2

*SEC v. LEK Securities Corp*., No. 17 cv 1789 (DLC), 2019 WL 1198599
 (S.D.N.Y., March 14, 2019)...........................................................................................1, 2, 6-9

**Rule**

Fed. R. Evid. 702 ............................................................................................................................ 1

**Other**

FINRA, Notice to Members 10-22 ...........................................................................................6,7, 8

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this reply memorandum of law in further support of its *Daubert* motion to exclude the opinion testimony of Richard T. Chase ("Chase").

## I.    INTRODUCTION

The SEC showed in its opening Memorandum that five categories of Chase's proposed expert opinion testimony are inadmissible because they are not helpful or reliable under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert*").  Indeed, Chase, an attorney, appears to have been hired by Defendants to serve another purpose:  to testify as a surrogate legal counsel and provide a summation of Defendants' arguments under the guise of expert testimony.

In response, Defendants' principal argument is that Chase is just rebutting the opinion testimony of the SEC's broker-dealer expert, Robert Lowry.  Rebutting an opposing expert, however, is not basis to allow an expert to provide improper opinion testimony and does not otherwise change the standard under which a court evaluates the admissibility of expert testimony.  Courts have so held, and a very recent case in *SEC v. LEK Securities Corp.*, No. 17 Civ. 1789, 2019 WL 1198599 (S.D.N.Y., Mar. 14, 2019) (Cote, J.), underscores that principle, as the court excluded three rebuttal experts under Rule 702 and *Daubert*.

This Court should do the same here and exclude the five categories of Chase's opinions.  Allowing such testimony will not only confuse and mislead the Jury, it will also needlessly prolong the trial and waste resources and time for the Court, the Jury, and the parties.

## II.     ARGUMENT

### A.     Defendants Fail to Provide Any Legitimate Basis to Admit Chase's Opinions on the Defendants' Scienter

The SEC showed in its opening Memorandum that Chase's proposed testimony is replete with improper and inadmissible opinions regarding Defendants' scienter -- that is, his opinions that Defendants acted in "good faith."  *See* SEC Br. at 2-3, 13.  Defendants' principal rejoinder, supported by no legal authority, is that Chase's testimony is proper because he is seeking to *rebut* the testimony of Robert Lowry, the SEC's expert (Ex. B to Decl. of Richard Roth, dated March 15, 2019).  *See* PAA Br. at 7-9.  This argument fails for two reasons.

*First*, Defendants are wrong on the law.  Every expert--whether an expert is designated for rebuttal or not--must satisfy the threshold admissibility requirements under *Daubert*.  *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) ("At a minimum, … rebuttal experts must meet *Daubert*'s threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony.") (collecting cases).  Thus, impermissible expert testimony cannot be admitted by simply proclaiming that such testimony serves as rebuttal.

The very recent decision in *SEC v. LEK Securities Corp.*, No. 17 Civ. 1789, 2019 WL 1198599 (S.D.N.Y., Mar. 14, 2019), further illustrates this principle.[1]  There, in considering various *Daubert* motions filed by the parties, the court applied the same admissibility standards for all experts, including the defendants' three rebuttal experts.  *See id.* at *13-27.  In so doing, the Court explained that an "expert may not opine as to the state of mind of [defendants]," which the Court noted as a "topic on which no expert is qualified to give an opinion," and excluded a rebuttal expert who provided such opinion.  *Id.* at *19, *24; *see also Fed. Hous. Fin. Agency v.*

---

[1] This decision was issued after the SEC filed its opening Memorandum, but before Defendants filed their opposition brief.

*Nomura Holding Am., Inc.*, No. 11 Civ. 6201, 2015 WL 353929, at * 5 (S.D.N.Y. Jan. 28, 2015) ("[T]he trier of fact must rely on the relevant direct and circumstantial evidence that sheds light on the individual's state of mind; she may not rely on an expert's assessment.").

*Second*, Defendants are wrong on the facts.  Contrary to Defendants' claim, the SEC expert, Lowry, did not create any need for Chase to proffer rebuttal expert testimony on Defendants' scienter.  Lowry was careful not to provide any assessment on Defendants' state of mind; he merely explained the duties of a broker-dealer and what Defendants should have done based on securities industry standards once they discovered the inaccurate language in the AGF II 2012 private placement memorandum ("PPM").  Lowry Report at 19.  By contrast, Chase impermissibly opined that "Allen maintained a good faith belief," that "nothing in the record to suggest that she [Wasserman] did not reach that judgment in good faith," and that "[Defendants] had a good faith belief that audits were, in fact, going to be performed as represented in the PPM."  Chase Report at 37, 39; Chase Dep. at 86:20-22 (Vasilescu Dec., Ex. 4).  Such opinion testimony should be excluded.

> **B.     Defendants Fail to Provide Any Proper Basis to Admit Chase's Opinions on How the Audit Language in the 2011 and 2012 AGF II PPMs Should be Interpreted**

The SEC showed in its opening Memorandum that Chase impermissibly intends to interpret a lay matter (the audit language in the PPMs) that a Jury is capable of understanding and deciding without the aid of an expert.  *See* SEC Br. at 3-5, 14.  In response, without addressing whether it is appropriate, in the first instance, for a putative broker-dealer expert like Chase to interpret the plain language of the audit representations in the 2011 and 2012 PPMs, Defendants again claim that Chase is opining in rebuttal to Lowry.  *See, e.g.,* Chase Report at 2, 3, 7, 33-39.  And, again, Defendants are wrong for multiple reasons.

*First*, as discussed above, improper expert testimony does not suddenly become a proper one when such testimony is labeled as rebuttal.  And expert testimony is not helpful if it merely addresses lay matters, such as reviewing English-language documents, as here, which the Jury is capable of understanding and deciding without the expert's help.  *See* SEC Br. at 14.

*Second*, Lowry did not create any need for Chase to proffer rebuttal expert testimony.  Contrary to Defendants' claim of "cherry-picking," Lowry did not selectively interpret provisions of the PPMs to support his opinions about the duties of a broker-dealer and what Defendants should have done based on the industry standards once they discovered the inaccurate language in the PPMs.  *See* Lowry Report at 11. (Roth Dec., Ex. B).  Unlike Chase, Lowry just quoted in his expert report the audit representations at issue from the PPMs -- which had been expressly set forth in the Complaint for this case.  *Id.*; Compl. (D.E. 6) at ¶¶ 24-30.

*Third*, and in any event, Chase's interpretation of various provisions is speculative and unsupported.  For example, Chase assumes that the Operating Agreement attached to the 2011 and 2012 PPMs should not be read together with the audit language in the PPMs.  *See* SEC Br. at 4-5; Chase Report at 19 (Roth Dec., Ex. C).  Thus, according to Chase, the 2011 and 2012 PPMs should be read by the Jury that there was no deadline for AGF II to provide audited annual financial statements, even though the Operating Agreement provides that audited annual financial statements should be available 90 days after the financial year ends in December.  PPM's Operating Agreement at §§ 11.1 & 11.5 (Vasilescu Dec., Exs. 6 & 7).  What Chase wants to tell the Jury is:  Ignore the plain construction of the 2011 and 2012 PPMs, which specifically incorporate the AGF II's Operating Agreement as Exhibit A of the PPMs, and ignore the fact that the pages of the PPMs, including the Operating Agreements, are consecutively numbered.  *See generally* 2011 and 2012 PPMs (with Operating Agreements) (Vasilescu Dec., Exs. 6 & 7).

Chase's view is at odds with his own deposition testimony.  He testified that it was common practice at the broker-dealers he worked at to send documents like the Operating Agreements to investors along with the PPM and that the broker-dealers expected investors to rely on such documents.  Chase Dep. at 162:15-165:10 (Vasilescu Dec., Ex. 4); 162:7-14 (Chase could not recall in the 35 years of his career when a broker-dealer he worked at sent a PPM with an attached document that his broker-dealer did not want the investors to rely on).

Defendants' claim that the 2014 PPM supports such a strained reading is also flawed. Investors who received the 2011 and 2012 PPM in years 2011, 2012 and 2013 obviously did not, and could not, have received the 2014 PPM to compare those earlier PPMs to the 2014 PPM.  Any reasonable investor who received the 2011 and 2012 PPM with the attached Operating Agreement would review and consider such document.  Chase claims that if the authors of the 2011 AGF II PPM wanted to put a deadline for when the audit of the financial statements would be made available, they would know how to put it in the 2011 and 2012 PPMs because in 2014, they included such a deadline in the PPM.  This convoluted argument makes little sense.  What the PPM *authors* intended in 2011 and 2012 cannot be gleaned, conveniently, from their own *ex post* edits to the 2014 PPM.  But, more fundamentally, the question is not even what the *authors* of the PPM intended, but what anyone who *received* the 2011 and 2012 PPM in *2011-2013* would understand when reading the PPMs with the incorporated Operating Agreement.

Significantly, Chase's opinion that Defendants acted in good faith when they continued to sell AGF II investments after they realized the PPMs had inaccurate audit language is based, as Chase himself conceded, on his view that the PPM did not have any deadline for AGF II to obtain an audit for its financial statement.  *See* SEC Br. at 5 & n.2; Chase Dep. at 169:25-

170.16 (Vasilescu Dec., Ex. 4); Chase Report at 25-26 (Roth Dec., Ex. C)  (claiming that a reading of the PPM requires the conclusion that an audit would only be done sometime in the future and thus "a reasonable investor could not have been misled" and "the failure by PAA and its personnel to catch this logical slip was clearly not intentional, nor does it reflect a material failure in PAA's due diligence on the 2011 AGF II offering.")

In *LEK Securities Corp.* the Court found flawed a similar assumption by defendants' expert such that it excluded not only the testimony about the assumption, but also the analysis that flowed from the assumption.  *See* 2019 WL 1198599, at *18 (because the defendant expert's analysis claimed that trades not included in the SEC's trading analysis were neither layering nor manipulative, that assumption was flawed and thus not a basis for that expert's further opinion.).  Similarly, Chase should not be allowed to tell the Jury that there is no language in the PPM that says that AGF II has to provide an audit to investors by any deadline and he should be precluded from proffering any opinion that is based on that false assumption.

C.    **Defendants Fail to Provide Any Permissible Basis to Admit Chase's Opinions on Case Law, the Charges Against the Defendants and Other Areas of Law**

Next, the SEC showed that Chase impermissibly opined about his interpretation of case law, the charges against the Defendants, and other areas of law, including FINRA Notice to Members 10-22 ("FINRA Notice").  *See* SEC Br. at 6, 14-15.  In response, instead of conceding that Chase had opined on inappropriate matters in his expert report and testimony, Defendants claim (1) that the SEC did not act in "good faith" when it asked Chase legal questions that Defendants would not ask at trial so that the SEC could attempt to exclude Chase; and (2) that the SEC is making a "misleading" argument about what Chase, as a rebuttal expert, is permitted to opine on regarding the FINRA Notice.  *See* PAA Br. at 14-16.  These

6

arguments cannot withstand scrutiny.

*First*, Chase's expert report and deposition testimony is rife with improper legal opinions.  In other words, the SEC did not look to manufacture evidence to exclude.  Chase's expert report reads like a trial memorandum of law for the defense and his deposition testimony reveals that he is ready and willing, if given an opportunity, to opine on what he views as the legal merits, or lack thereof, of the SEC's fraud claims against Defendants.  *See, e.g.*, Chase Report at 25-26  (Roth Dec., Ex. C) ("But I am unable to conclude that this [audit] representation is materially misleading"; "the failure by PAA and its personnel to catch this logical slip was clearly not intentional, nor does it reflect a material failure in PAA's due diligence on the 2011 AGF II offering."); at 38 ("Nothing cited in Lowry's opinion … furnishes a basis for a fraud claim."); Chase Dep. at 109:21-110:19 (Vasilescu Dec., Ex. 4) (admitting that he would testify as to whether Defendants violated the anti-fraud provisions of the federal securities laws and what federal case law means, including citations to case law).

As discussed in the SEC's opening Memorandum, such expert testimony is inadmissible.  *See* SEC Br. at 1, 14-15 (citing cases).  And Defendants' self-serving proclamation that they will exercise restraint by not asking Chase improper questions at trial is hardly reassuring.  *See* PAA Br. at 14.  This Court should preclude Chase from testifying about improper matters:  his interpretation of case law, the charges against the Defendants, and other areas of law.

*Second*, as discussed above, improper expert testimony does not suddenly become proper when one party calls such testimony rebuttal.  Particularly with respect to the FINRA Notice, Chase—by contesting the legal applicability or sufficiency of the FINRA Notice, including quibbling about whether a citation in a footnote in the FINRA Notice is misplaced—

is reflecting his policy preferences.  *See* SEC Br. at 6, 15.  However, "[t]hese personal opinions about what the law is or should be invade the province of the court to instruct the jury on the law and would mislead the jury in its application of the federal securities laws."  *LEK Secs. Corp.*, 2019 WL 1198599, at *22.

Moreover, Chase's assessment of the FINRA Notice is, at best, speculative.  As the SEC previously pointed out, Chase admitted that he did not recall reading the FINRA Notice before he prepared his expert report and that he had no experience implementing that FINRA Notice in the securities industry.  SEC Br. at 6.  In fact, Chase provided no evidence that he even thought about the FINRA Notice or rendered any advice on the Notice's applicability before the issuance of his expert report in this case.  *Id.*  Notwithstanding Defendants' conclusory claim that Chase is opining from "his experience and knowledge," PAA Br. at 15, he has, in fact, no experience with the FINRA Notice or knowledge of how that Notice was viewed within the industry at the time that Defendants were engaged the misconduct alleged in the Complaint.  Such expert opinions should be excluded.  *See LEK Secs. Corp.*, 2019 WL 1198599, at *21 (excluding defendant's expert's testimony where "[h]e does not cite any recognized source or reliable basis for his [opinion] and lacks the expertise to form any reliable opinion of his own.").

### D.    Defendants Fail to Specify Any Factual Basis or Analysis to Admit Chase's Opinions that PAA Performed Proper Due Diligence

Chase opined that PAA performed extensive due diligence without any factual basis or analysis.  *See* SEC Br. at 6-10, 15-16.  In their opposition, Defendants claim that Chase' due diligence opinion is supportable because his expert report cites prior testimony by Allen, Wasserman and Allen's assistant, Jennie Pell.  PAA Br. at 16-17.  Such information, however, is so minimal and scant that it is not a sufficient basis for Chase to claim that Defendants undertook

proper due diligence.

As the SEC pointed out in its opening Memorandum, neither Allen nor Wasserman in their recorded testimony provided any detail about the due diligence they claim they performed on AGF II.  *See* SEC Br. 6-10.  And neither Defendants nor Chase can point to any detailed testimony that Pell provided regarding the due diligence that PAA undertook.  Significantly, Defendants' opposition fails to address additional glaring deficiencies, such as the fact that Defendants never produced a due diligence file to Chase or the SEC, and that Chase claimed to interview Allen and Pell in 2017 just before he drafted his report, but could not remember what he asked them and he threw away his notes.  *See id.* at 8-9.[2]  Also, Defendants failed to address that in his deposition, Chase admitted that there were areas of due diligence that he failed to probe, such as whether Defendants conducted due diligence on AGF I and the funds Ralph Johnson raised through that entity and the loans he made with investors' money before he created AGF II.  Chase Dep. at 149:3-150:2 (Vasilescu Dec., Ex. 4).

Based on *LEK Securities Corp.*, and the cases cited in the SEC's opening Memorandum, Chase's proposed opinion testimony on whether Defendants performed proper due diligence on the AGF II securities should be excluded as unsupported.

### E.    Defendants Fail to Provide Any Legitimate Basis to Admit Chase's Opinions on Interpretation of Other Evidence

Finally, the SEC showed that, in addition to all other infirmities identified in the SEC's opening Memorandum and above, Chase cherry-picks facts to make various opinions, interspersed with narration, in attempt to exonerate Defendants.  SEC Br. at 10-11, 16-17.  In response, Defendants claim that there is some factual basis for his opinions.  PAA Br. at 17-19.

---

[2] Nor could Chase have relied on Pell's March 12, 2014 testimony.  Nowhere in that transcript does Pell discuss the due diligence that PAA undertook.  Significantly, neither Chase in his Report nor the Defendants in their opposing brief, cite any detail in Pell's 2014 testimony.  The SEC would be pleased to furnish a copy of that testimony if the Court wishes to review it.

Defendants' argument misses the point.

Assuming *arguendo* that there is some colorable basis for Chase's opinions about the significance of Johnson's March 8, 2012 email to Allen, or about the nature of Johnson's and Allen's contact with an attorney in the fall of 2013, Chase, as an expert, should not become surrogate legal counsel and be allowed to narrate the "cherry-picked" evidence through his interpretative prism. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) ("experts should not be permitted to 'supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence.'") (internal quotation marks and citation omitted). His opinion testimony on such matters should be excluded.

## III.    CONCLUSION

For the reasons stated above, as well as those in the SEC's opening Memorandum, the SEC respectfully requests that the Court preclude Richard T. Chase from testifying as an expert at the jury trial regarding the five category of opinions discussed above.

Dated:          New York, New York
                March 22, 2019

_____
Alexander M. Vasilescu
Richard Hong
Jorge G. Tenreiro
Karen M. Lee
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0178 (Vasilescu)
vasilescua@sec.gov