UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SECURITIES & EXCHANGE
COMMISSION,
                Plaintiff,

v.

AMERICAN GROWTH FUNDING II, LLC,        16-CV-828 (KMW)
PORTFOLIO ADVISORS ALLIANCE, INC.,
RALPH C. JOHNSON,                           **OPINION AND ORDER**
HOWARD J. ALLEN III, and
KERRI L. WASSERMAN

                Defendants.
------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

       The Securities and Exchange Commission ("SEC" or "the Commission") sues American Growth Funding II and Ralph C. Johnson ("the AGF II Defendants") and Portfolio Advisors Alliance, Howard J. Allen III, and Kerri L. Wasserman ("the PAA Defendants") for securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 17(a)(1), (2), and (3) of the Securities Act. The AGF II Defendants have settled. (ECF Nos. 205, 206.)

       This Court's rulings on the remaining parties' motions *in limine* are stated below.

## DICUSSION

### I. RULINGS

#### A. PAA Motions *in Limine*

##### 1. Motion I: Evidence Related to AGF II's Board of Directors

       The PAA Defendants seek to preclude the SEC from offering "any evidence or testimony on the issue of whether the PPMs contained any false or misleading representations regarding AFG II's management." (PAA Defs. Mem. Supp., ECF No. 210, at 8.) According to the PAA Defendants, evidence related to AGF II's purported misrepresentations in the PPMs as to the

1

Board of Managers is no longer relevant, because the AGF II Defendants have settled, and the SEC does not allege the PAA Defendants knew or should have known that these representations were false or misleading. (*Id.*)

In response, the SEC states it "will not introduce evidence or testimony that the Defendants violated the securities laws with statements in the PPMs about the composition of AGF Management II's Board of Managers." (SEC Mem. Opp'n, ECF No. 220, at 11.) The SEC argues that, "[w]hat the Defendants really seek is to broadly exclude '*any* evidence' that may somehow relate to AGF II's Board of Managers . . . ." (*Id.*)

The Court agrees with the PAA Defendants that evidence related to the alleged misrepresentations as to AFG II's Board of Managers is not relevant now that the AGF II Defendants have settled. The SEC had alleged that the *AGF II Defendants* made false representations in the 2011 and 2012 PPMs about AGF II's Board of Managers. The SEC never alleged that the PAA Defendants were responsible for or aware of these alleged misrepresentations. Contrary to the contention of the SEC, the PAA Defendants are not seeking to exclude any evidence "somehow" related to AGF II's Board of Managers. Instead, the PAA Defendants seek to exclude evidence related to the alleged misrepresentations of job titles in the PPMs—that is, whether the individuals identified in the PPMs actually held the job titles assigned to them. This evidence is excluded because it is not relevant to any claim remaining in this case. Therefore, the Court GRANTS the motion. No evidence related to whether the individuals identified in the PPMs held the job titles assigned to them will be admitted at trial, and no argument concerning this subject will be permitted.

    2.    <u>Motion II: Evidence Related to the Monthly Account Statements</u>

The PAA Defendants seek to preclude the SEC from offering evidence or testimony on the issue of whether the monthly statements sent to investors were false or misleading, because they contend that "the SEC has never alleged that the PAA Defendants knew or should have known that the account statements AGF II sent to investors were false or misleading or that the PAA Defendants were in any way involved with Johnson's actions in causing AGF II to send out those monthly statements." (PAA Defs. Mem. Supp. at 8–9.)

In response, the SEC argues that the monthly statements, which were sent to investors after the PPMs, are relevant to materiality because they show that "the information an investor would have gleaned from a proper audit was not available elsewhere." (SEC Mem. Opp'n at 13.)

It is not clear how the alleged misrepresentations *in the monthly account statements* as to the financial health of AGF II are relevant to the alleged misrepresentations *in the PPMs* as to whether AGF II had been audited.[1] Materiality is determined *"in light of the circumstances existing at the time the alleged misstatement occurred."* *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 165 (2d Cir. 2000) (emphasis added); *see also Spielman v. Gen. Host Corp.*, 402 F. Supp. 190, 194 (S.D.N.Y. 1975) (Weinfeld, J.) ("The determination of materiality is to be made upon all the facts as of the time of the transaction and not upon a 20–20 hindsight view long after the event."). The alleged inaccuracy of monthly account statements sent to investors *subsequent* to their investment in AGF II is not relevant to whether the misrepresentations in the PPMs were material *at the time they were made*.[2]

---

[1] Evidence related to the monthly account statements was relevant to materiality before the AGF II Defendants settled. This is so because the SEC alleged that the AGF II Defendants violated the securities laws by making misrepresentations *in the monthly statements themselves*. Now that the AGF II Defendants have settled, the materiality of the misrepresentations in the monthly statements is not relevant.

[2] This was the reason the Court excluded evidence of investor profits in its previous ruling. (ECF No. 187, at 4–5.)

3

Even if the allegedly misleading monthly statements were relevant, this evidence should be excluded because its probative value is substantially outweighed by the risk of unfair prejudice and confusion. This evidence will place undue focus on the purported wrongdoing of the AGF II Defendants, which entailed concealing, month after month, the status of the investors' investments. Placing undue focus on the wrongdoing of the AGF II Defendants—wrongdoing that does not involve the PAA Defendants—presents a substantial danger of confusion and unfair prejudice.

Therefore, the Court GRANTS the motion. No evidence related to the monthly account statements sent to investors will be admitted at trial, and no argument concerning this subject will be permitted.

3. Motion III: Evidence Related to the Adequacy of the Weinberg Audit

The PAA Defendants move to preclude the evidence of the adequacy of AGF II's audit performed by Seymour Weinberg, including whether Weinberg examined AGF's outstanding loans receivables. (PAA Defs. Mem. Supp. at 8–10.) The PAA Defendants argue this evidence is not relevant because they were not responsible for hiring Weinberg to perform the audit. (*Id.*)

The Court denies the motion to preclude. Although the PAA Defendants did not hire Weinberg, the adequacy of his audit is nevertheless relevant to the PAA Defendants' *scienter*. Before AGF II hired Weinberg, the PAA Defendants appear to have known that a proper audit of AGF II would require an audit of AGF. (*See* SEC Mem. Supp. at 4.) After Weinberg was hired, the PAA Defendants learned that Weinberg's audit of AGF II would *not* include an audit of AGF. The fact that the PAA Defendants knew that the Weinberg audit would be inadequate but took no action whatsoever suggests that, similar to Johnson, the PAA Defendants did not want a proper audit of AGF II because this would reveal the deterioration AGF II's principal asset. This

evidence makes it more likely that the PAA Defendants acted with an intent to defraud by misrepresenting in the PPMs that AGF II had been and would continue to be audited.

Therefore, the Court DENIES the motion.

4. Motion V: Evidence Related to AGF II's Ability to Repay its Loans

The PAA Defendants move to preclude the SEC from offering evidence related to the deterioration of AGF II's principal asset, a loan receivable from AGF. (PAA Defs. Mem. Supp. at 9–12.)

The Court denies the motion, because this evidence is relevant to the PAA Defendants' *scienter*. That AGF II's principal asset had greatly deteriorated, while the PAA Defendants continued to sell AGF II securities under the PPMs, makes it more likely that the PAA Defendants, by purportedly misrepresenting that AGF II had been and would be continue to be audited, acted with the requisite intent to defraud.

The PAA Defendants are correct that evidence related to the poor performance of the loans might lead the jury to believe that AGF II investors suffered losses. But this potential unfair prejudice does not substantially outweigh the probative value of this evidence as to the PAA Defendants' *scienter*. Moreover, an instruction to the jury as to the irrelevance of investor losses or profits will lessen the potential for prejudice.

Therefore, the Court DENIES the motion.

5. Motion V: Ponzi Scheme

The PAA Defendants move to preclude the SEC from using the term "Ponzi scheme" in argument or testimony because whether AGF II operates as a Ponzi scheme is not relevant to any issue in this case. (PAA Defs. Mem. Supp. at 13–14.)

Referring to AGF II as a Ponzi scheme would needlessly lengthen this trial and cause confusion and prejudice. The SEC did not bring a claim in this case that AGF II is a Ponzi scheme. Use of the term would cause an unnecessary digression into the structure of a Ponzi scheme and evidence and argument regarding whether AGF II was a Ponzi scheme. Referring to AGF II as a Ponzi scheme makes it more likely than not that the jury would conflate this case with high-profile cases involving Ponzi schemes, even though there is no allegation in this case that AGF II is a Ponzi scheme. Use of the term would thus confuse the jury, and its probative value is substantially outweighed by the risk of unfair prejudice.

Therefore, the motion is GRANTED. The SEC will not be permitted to use the term "Ponzi scheme" in argument or testimony.

6. Motion VI: Allen's CRD Report

The PAA Defendants seek to exclude Allen's Central Registration Depository ("CRD") report, which contains FINRA-related disclosures, including Allen's disciplinary and regulatory history. (PAA Defs. Mem. Supp. at 14–15.) The PAA Defendants argue that the CRD report is not relevant to any claim in this case and is unduly prejudicial. (*Id.*)

The Court agrees with the PAA Defendants that the CRD report is not relevant to any claim in this case. Moreover, Allen's disciplinary history would likely prejudice the PAA Defendants by suggesting that, because Allen was disciplined in the past, his actions in this matter were unlawful. The probative value of this evidence is thus substantially outweighed by its risk of confusion and unfair prejudice.

Therefore, the Court GRANTS the motion. The CRD report will not be admitted at trial, and no argument concerning this subject will be permitted.[3]

---

[3] This ruling does not preclude the SEC from introducing the CRD report, if appropriate, for impeachment purposes at trial.

### 7. Motion VII: Evidence of the Percentage of Revenues Earned by PAA in Connection with the Sale of AGF II Securities

The PAA Defendants move to preclude the SEC from offering evidence of the percentage of revenues earned by PAA in connection with the sale of AGF II securities relative to PAA's overall revenue. (PAA Defs. Mem. Supp. at 16–18.) The PAA Defendants argue that this evidence is not relevant because it demonstrates only an "intent to profit," as opposed to an intent to deceive, and a general intent to profit, which is possessed by all corporate insiders, is not sufficient to prove *scienter*. (*Id.* at 16–17.)[4] The PAA Defendants contend that allowing the SEC to introduce evidence showing the relative percentage of revenues generated by PAA through sale of AGF II securities would be prejudicial for two reasons. First, the jury would conflate the PAA Defendants' intent to profit with an intent to deceive. (*Id.* at 17.) Second, relying on *SEC v. Goldstone*, No. 12-CV-257 (JB), 2016 WL 3654273, at *15–17 (D.N.M. June 13, 2016), the PAA Defendants contend that only the revenue related to the sale of AGF II securities is relevant, and because evidence as to the relative *percentage* of revenue depends, in part, on revenue unrelated to the AGF II, such evidence is prejudicial.

The PAA Defendants' arguments are meritless. First, the percentage of PAA's revenue derived from their sale of AGF II securities, as compared to PAA's other work, is relevant to the question of *scienter*. PAA may well have been inclined to protect one of its major revenue streams and thus ignore or conceal potential wrongdoing related to its sale of AGF II securities. Second, any confusion or prejudice concerning the difference between a general intent to profit and the required intent to defraud can be cured through an instruction. Finally, *Goldstone* stands

---

[4] To support this proposition, the PAA Defendants rely on *South Street Cherry, LLC v. Hennessee Group LLC*, 573 F.3d 98, 109 (2d Cir. 2009) ("But in attempting to show that a defendant had fraudulent intent, it is not sufficient to allege goals that are 'possesses by virtually all corporate insiders' . . . ."). But *South Street Cherry* concerned the *pleading standard* for *scienter* under the Private Securities Litigation Reform Act ("PSRLA"). That is not the question here.

7

for the proposition that evidence of a defendant's *general wealth* is irrelevant and prejudicial. *See id.* at 12–17. However, the SEC is not seeking to introduce this evidence to show that the PAA Defendants are wealthy. The rationale in *Goldstone* is thus not applicable. The relative percentage of PAA's revenue generated through the sale of AGF II securities is relevant to the PAA Defendants' motive and intent.

Therefore, the Court DENIES the motion. For the same reasons stated above, the SEC's corresponding motion, (*see* SEC Mem. Supp., ECF No. 216, at 10–11.), to permit evidence of the relative percentage of PAA's revenues generated through the sale of AGF II securities is GRANTED.

**B.  SEC Motions in Limine**

1.  Motion I: Evidence of Investors' Status as Accredited

The SEC moves to exclude evidence that the AGF II investors were "accredited," specifically evidence that AGF II investors had a high net worth. (SEC Mem. Supp. at 5–8.) The SEC argues that the accredited status of AGF II investors is not relevant to any issue in this case. (*Id.*) In response, the PAA Defendants argue that evidence of the accredited status of AGF II investors would be relevant if the SEC offers evidence suggesting that AGF II investments were not suitable for its investors. (PAA Defs. Mem. Opp'n, ECF No. 224, at 3–4.) In their reply, however, the SEC states that it will *not* "argue that AGF II was not a suitable investment." (SEC Reply, ECF No. 225, at 2 n.2.)

This motion is thus moot.

2.  Motion II: Evidence of Investor Sophistication[5]

---

[5] The SEC appears to use the phrases "accredited" and "sophisticated" interchangeably. (SEC Mem. Supp. at 5–8.) However, because the two concepts are distinct, the Court construes them separately here.

The SEC moves to preclude the PAA Defendants from offering evidence of investor sophistication. (SEC Mem. Supp. at 5–8.) The SEC argues that this evidence is prejudicial because it invites the jury to conclude that AGF II investors "should have found out the truth" about the alleged misrepresentations. (*Id.* at 7–8.)

In response, the PAA Defendants argue that investor sophistication is relevant to materiality. (PAA Defs. Mem. Opp'n at 4–6.) The PAA Defendants contend that the market at issue in this case involves highly speculative, highly illiquid, private placements in an investor pool. (*Id.* at 5.) According to the PAA Defendants, a reasonable investor in this market is sophisticated and thus would not have been misled by the representations in the PPMs. The PAA Defendants cite *United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018), which held that the "[reasonable investor] standard may vary . . . with the nature of the traders involved in the particular market." (*Id.*) The PAA Defendants also contend that the sophistication of the SEC's investor witnesses is relevant to whether those witnesses are representative of reasonable investors in the market at issue. (*Id.*)

The Court agrees with the PAA Defendants that investor sophistication is relevant to materiality in this case. The potential for unfair prejudice does not substantially outweigh the probative value of this evidence. Moreover, any prejudice can be addressed through a jury instruction.

Therefore, the Court DENIES the motion.

3. <u>Motion III: Evidence Related to "Boilerplate Cautionary Disclosures"</u>

The SEC moves to exclude allegedly "boilerplate cautionary disclosures" contained in the PPMs because they are irrelevant and their introduction would needlessly lengthen the trial. (SEC Mem. Supp. at 8–10.)

9

In response, the PAA Defendants argue that the risk disclosures contained in the PPMs are relevant to the materiality of audit language contained in the PPMs because the risk disclosures factor into the total mix of information available to reasonable investors. (PAA Defs. Mem. Opp'n at 7.)

The SEC's conclusory argument that the risk disclosures in the PPMs are "boilerplate" is not sufficient to allow the Court to determine the potential relevance of particular risk disclosures at this time. Although introduction of numerous risk disclosures might needlessly lengthen the trial, it is not clear at this stage what evidence the PAA Defendants will offer regarding the risk disclosures.

Therefore, the Court DENIES the motion without prejudice. The SEC may renew its objections at trial.

4. Motion IV: Ralph Johnson's Statements

The SEC moves to permit the introduction of two sets of out-of-court statements made by Johnson: (1) statements made to the SEC during its investigation; (2) statements made to Stuart Bender regarding whether Johnson wanted Bender to conduct an audit of AGF II. (SEC Mem. Supp. at 11.) The SEC argues these statements are non-hearsay under Federal Rule of Civil Procedure 801(d)(2)(E), which provides that statements "offered against an opposing party . . . [that were] made by the party's coconspirator during and in furtherance of the conspiracy" are non-hearsay.

The SEC contends that Johnson and the PAA Defendants were coconspirators because: (1) "'AGF II retained PAA to sell its AGF II securities,' and [] Allen and Wasserman were principals at PAA;" (2) "Allen indirectly owned 49% of AGF II's management entity, and Johnson owned 51%;" (3) "Allen agreed with Johnson regarding the need to complete AGF II's

10

audits;" and (4) "[Johnson], Allen, and PAA worked together on the PPMs." (SEC Mem. Supp. at 12.)

In response, the PAA Defendants rely on *United States v. Russo*, 302 F.3d 37 (2d Cir. 2002), to argue that the "general association" between the PAA Defendants and Johnson is not sufficient to permit the introduction of Johnson's statements. The PAA Defendants point out that, in fact, the SEC itself alleges that Johnson repeatedly mislead and lied to the PAA Defendants about the status of AGF II's audit. (*Id.* at 14–16.) Finally, the PAA Defendants contend that the SEC is not permitted to introduce statements Johnson made to the SEC simply because both Johnson and the PAA Defendants were under investigation or charged with violating the securities laws. (*Id.* at 16–17.)

Whether a statement in this case meets the requirements of Rule 801(d)(2)(E) cannot be determined until trial. For Rule 801(d)(2)(E) to apply, the SEC must show by a preponderance of the evidence: (1) the existence of a conspiracy; (2) that the conspiracy's members included the declarant and the party against whom the statement is offered; and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy. *See United States v. Tracey*, 12 F.3d 1186, 1196 (2d Cir. 1993). At this juncture, the Court is unable to determine whether the statements the SEC intends to offer are non-hearsay under Rule 801(d)(2)(E) for two principal reasons. First, although the SEC generally references two sets of statements—statements made to Stuart Bender about an audit of AGF II and statements made to the SEC—the SEC has not provided the Court with the *specific* statements it wishes to introduce. Second, without hearing trial evidence concerning the *scope* of the conspiracy, the Court is unable to determine whether the specific statements the SEC plans to offer were made during and in furtherance of the conspiracy.

11

Therefore, the motion is DENIED. The Court will resolve any further motions or objections as the evidence comes in at trial.

## CONCLUSION

This Order resolves docket numbers 210 and 215.

SO ORDERED.

Dated: New York, New York
April 19, 2019

_____
KIMBA M. WOOD
United States District Judge