UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

      v.

AMERICAN GROWTH FUNDING II, LLC,
PORTFOLIO ADVISORS ALLIANCE, INC.,
RALPH C. JOHNSON, HOWARD J. ALLEN
III, and KERRI L. WASSERMAN,

                    Defendants.
------------------------------------------------------------X

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/24/19

16-CV-828 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

      Following a jury verdict in favor of the Securities and Exchange Commission ("SEC") and against defendants Howard Allen, Kerri Wasserman, and Portfolio Advisors Alliance ("PAA") (collectively, "Defendants"), the parties submitted briefing on remedies. The SEC requested three categories of relief: (1) a permanent injunction, enjoining Defendants from future violations of the antifraud provisions of the securities laws; (2) disgorgement by Allen and PAA of the proceeds of their fraudulent actions, along with pre-judgment interest; and (3) the imposition of civil penalties. (Plaintiff's Post-Trial Brief on Remedies ("Pl.'s Br."), ECF No. 304, at 11.) The Court awards relief as set forth below.

## DISCUSSION

**I.   Relief**

    **A.   Injunctive Relief**

      The SEC seeks a permanent injunction against Defendants. "Injunctive relief is expressly authorized by Congress to proscribe future violations of federal securities laws." *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998). Such relief is warranted if there is a reasonable

1

likelihood that defendants will commit future violations of the securities laws. *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99–100 (2d Cir. 1978). In determining whether to grant a permanent injunction, courts consider:

> the fact that defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an "isolated occurrence;" whether defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

*Id.* at 100. The more onerous an injunction's burdens, the more persuasive the SEC's showing must be. *SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990).

Applying these factors, the Court finds that a permanent injunction is warranted. The jury found Defendants liable for violations of the antifraud provisions of the securities laws, which required a finding that Defendants acted with *scienter*. The violations continued over a period of years, and were not simply an isolated occurrence of bad judgment. As Defendants' opposition to the requested relief demonstrates, they continue to dispute their blame for the illegal conduct. Because Allen and Wasserman are registered broker-dealers at PAA, which has continued to operate in the securities industry, Defendants are in a position where future violations could be anticipated. Finally, the injunction is not onerous because it merely requires Defendants not to break the law. *See SEC v. Bronson*, 246 F. Supp. 3d 956, 974 (S.D.N.Y. 2017) (Karas, J.).

Taking into account all the applicable factors, the Court concludes that the requested permanent injunction is appropriate.

## B. Disgorgement

### 1. Disgorgement Calculation

The SEC seeks to recover ill-gotten profits from PAA and Allen through disgorgement. Disgorgement is an "equitable remed[y] premised on the powers and discretion of the Court to prevent unjust gain and to deter others." *SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 434 (S.D.N.Y. 2007) (Lynch, J.), *aff'd sub nom. SEC v. Altomare*, 300 F. Appx. 70 (2d Cir. 2008). The SEC seeks to disgorge $860,000 plus prejudgment interest from PAA and Allen, jointly and severally, and $166,427 plus prejudgment interest from Allen alone.

The amount of disgorgement ordered "need only be a reasonable approximation of profits causally connected to the violation." *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995) (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)). The SEC bears the burden of establishing such an approximation, after which the burden shifts to the defendant to demonstrate that the approximation is unreasonable. *See SEC v. Razmilovic*, 738 F.3d 14, 31-32 (2d Cir. 2013). For example, the defendant may show "that he received less that the full amount allegedly misappropriated and sought to be disgorged." *SEC v. Benson*, 657 F. Supp. 1122, 1133 (S.D.N.Y. 1987) (Leval, J.). Uncertainty is resolved against the defendant. *See Patel*, 61 F.3d at 140.

At trial, the parties stipulated that PAA sold approximately $8.6 million in AGF II securities from March 2011 to December 31, 2013. (PX 172 ¶ 17, ¶¶ 35–47.) They further stipulated that PAA received ten percent of the AGF II securities as commissions, (PX 172 ¶ 24.), and that Allen made most of the commission-generating sales, (PX 172 ¶ 42.). Accordingly, the SEC identifies $860,000—PAA's approximate total commissions for the relevant period—as subject to disgorgement.

3

Defendants dispute this figure. (Defendants' Post-Trial Brief on Remedies ("Defs.' Opp'n Br."), ECF No. 308, at 16.) According to Defendants, PAA sold $8,498,658 in AGF II securities from 2011 through 2013, and earned only $823,394 in commissions. Defendants offer no basis to credit its claim, and no basis to discredit the parties' stipulation. Defendants rely on a declaration from co-defendant Kerri L. Wasserman. The declaration states that Wasserman reviewed PAA's books and records and that PAA's commissions totaled $823.394, but otherwise contains no citations or supporting documents to substantiate her fact-bare assertions. The Court finds that $860,000 represents a reasonable approximation of profits associated with the sale of AGF II securities, and is properly disgorged.

The SEC also seeks disgorgement of $166,427 from Allen—his compensation from AGF Management II. Allen wholly owned Pelham LLC, which owned 49 percent of AGF Management II. (Tr. 279:1–10, 279:15–22, 280:20–25 (Johnson testimony); (Tr. 373:20–374:8 (Allen testimony).) The parties stipulated, and Defendants do not dispute, that Allen received compensation, through Pelham LLC, from AGF Management II. (PX 172 ¶ 19.) The SEC claims, and Defendants do not dispute, that this compensation totaled $166,427 during the relevant period. (Pl.'s Br. at 11; Defs.' Opp'n Br. at 16.) The Court finds that $166,427 represents a reasonable approximation of Allen's compensation from AGF Management II and is properly disgorged.

2. Prejudgment Interest

The SEC seeks prejudgment interest on the disgorged sums. Like disgorgement, an award of prejudgment interest is a form of equitable relief "confided to the district court's broad discretion." *Commercial Union Assurance Co. PLC v. Milken*, 17 F.3d 608, 613 (2d Cir. 1994). Its principal purpose is to prevent a defendant from "obtaining the benefit of what amounts to an

interest free loan procured as a result of illegal activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996) (Newman, J.). For SEC disgorgements, prejudgment interest is typically calculated using the Internal Revenue Service tax underpayment rate under 26 U.S.C. § 6621(a)(2). *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996).

The SEC seeks $199,721.28 in prejudgment interest, calculated using the tax underpayment rate, on $860,000 in disgorged commissions, and $38,649.97 in prejudgment interest, calculated using the tax underpayment rate, on $166,427 in disgorged payments to Allen. Defendants do no deny that an award of prejudgment interest is appropriate. Nor do they take issue with the tax underpayment rate. Defendants merely argue that the underlying disgorgement amounts according to which the interest was calculated are unreasonable. (Defs.' Opp'n Br. at 18.) As explained above, the Court finds the disgorgement amounts reasonable. The requested prejudgment interest is likewise reasonable.

### 3. Joint and Several Liability

The SEC argues that PAA and Allen are jointly and severally liable for disgorgement of PAA's commissions and prejudgment interest thereon. "[A] controlling person who has failed to establish his good-faith defense is to be held 'liable jointly and severally with and to the same extent as' the controlled person." *First Jersey Sec., Inc.*, 101 F.3d at 1475 (quoting 15 U.S.C. § 78t). Thus, "where a firm has received gains through its unlawful conduct, where its owner and chief executive officer has collaborated in that conduct and has profited from the violations, and where the trial court has, within the proper bounds of discretion, determined that an order of disgorgement of those gains is appropriate, it is within the discretion of the court to determine that the owner-officer too should be subject, on a joint and several basis, to the disgorgement order." *Id.*

5

Allen failed to establish a "good faith" defense, plainly "collaborated" in PAA's unlawful conduct, and profited from that collaboration. *First Jersey Sec., Inc.*, 101 F.3d at 1475. Allen owned PAA, and sold the majority of all AFG II investments. (PX 172 ¶¶ 81, 42.) Allen and PAA are jointly and severally liable for disgorgement of $860,000 in commissions and $199,721.28 in prejudgment interest thereon.

C. **Civil Penalties**

The SEC also asks the Court to impose civil penalties, which serve punitive and deterrent functions. *Moran*, 944 F. Supp. at 296. Civil penalties can be calculated in two ways. One method is to simply assess the gross pecuniary gain. The other is to multiply the number of violations by a dollar amount determined with reference to the applicable tier of offense severity. *See* 15 U.S.C. §§ 77t(d) & 78u(d). Tier One, which requires no showing of *scienter*, permits penalties up to $7,500 per violation for an individual and $75,000 for a corporate entity; Tier Two, for violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," allows penalties up to $75,000 per violation for an individual and $375,000 per violation for a corporate entity; Tier Three, for violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" that also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses," provides for penalties of as much as $150,000 per violation for an individual and $725,000 per violation for a corporate entity. *Id.*[1] The term "violation" is not defined. *See In re Reserve Fund Sec. & Derivative Litig.*, No. 09–CV–4346, 2013 WL 5432334, at *20 (S.D.N.Y. Sept. 30, 2013) (Gardephe, J.). Some courts look to the number of "violative transactions" or the number of

---

[1] The amounts listed here reflect the penalties for violations occurring between March 4, 2009 and March 5, 2013. *See* 17 C.F.R. § 201.1001 Table I (setting out civil monetary penalty inflation adjustments).

6

"investors to whom illegal conduct was directed," while others calculate damages based on the number of statutory violations committed. *Id.*

Courts consider several factors in determining whether civil penalties should be imposed and in what amounts. *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007) (Holwell, J.). Those factors include "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's *scienter*; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Id.* (citing *SEC v. Coates*, 137 F. Supp. 2d 413, 429 (S.D.N.Y. 2001) (Motley, J.). Because the penalty framework is highly discretionary, "prior decisions and consent decrees are of little comparative value for any individual matter." *Moran*, 944 F. Supp. at 296–97.

The first, second, and fourth factors largely overlap with the permanent injunction factors and, for the same reasons outlined above, weigh in favor of imposing significant penalties. That Defendants' conduct did not result in substantial losses is mitigating, notwithstanding the risk of loss posed by the conduct. As to the fifth factor, Defendants have not carried their burden to demonstrate inability to pay. The Court declines to hold an evidentiary hearing to give Defendants the chance to present proofs that they could have included in the declarations they submitted in support of their remedies brief.

The Court finds that Defendants' actions meet the standard for imposing Third Tier penalties. Assessing Third Tier penalties, however, would result in damages disproportionate to the harm Defendants' misconduct caused and be "unduly penalizing." *SEC v. Elliot*, No. 09–CV–7594, 2012 WL 2161647, at *11 (S.D.N.Y. June 12, 2012) (Forrest, J.) (imposing First Tier

7

penalties, despite finding defendants' actions met the standard for imposing Second or Third Tier penalties). Counting each of the eighty-six investors affected by Defendants' conduct as a violation, as the SEC proposes, would likewise yield an excessive sanction. Accordingly, the Court assesses Second Tier penalties using as the multiplier the number of statutory violations found by the jury. *See, e.g., SEC v. Shehyn,* No. 04–CV–2003, 2010 WL 3290977, at *2, *8 (S.D.N.Y. Aug. 9, 2010) (Preska, J.) (although defendant made fraudulent representations to "at minimum 700 investors," the court found that the defendant "committed 5 [statutory] violations" and awarded "$120,000 for each violation").

Against Allen, the Court assesses penalties of $20,000 for each of the six statutory violations found by the jury. The jury found that Allen (1) violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5(a)-(c) thereunder, 17 C.F.R. § 240.10b-5(a)-(c); (2) violated Section 17(a)(1) and Section 17(a)(2) or (3) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(1)-(3); (3) culpably participated in PAA's violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder as a "control person" under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a); (4) aided and abetted violations by AGF II of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Section 17(a) of the Securities Act; (5) aided and abetted violations by Ralph Johnson of 10(b) of the Exchange Act and Rule 10b-5 thereunder and Section 17(a) of the Securities Act; and (6) aided and abetted violations by PAA of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Section 17(a) of the Securities Act.[2]

---

[2] On May 17, 2019, the Court ordered the parties to submit supplemental briefing concerning whether sufficient evidence was presented at trial to support the aiding and abetting charges against Allen and Wasserman. (ECF No. 281.) A review of the supplemental briefing makes clear that sufficient evidence was presented at trial to support the jury's determination of liability for aiding and abetting.

8

Against Wasserman, the Court assesses penalties of $20,000 for each of the five statutory violations found by the jury. The jury found that Wasserman (1) culpably participated in PAA's violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder as a "control person" under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a); (2) aided and abetted violations by AGF II of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Section 17(a) of the Securities Act; (3) aided and abetted violations by Ralph Johnson of 10(b) of the Exchange Act and Rule 10b-5 thereunder and Section 17(a) of the Securities Act; (4) aided and abetted violations by PAA of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Section 17(a) of the Securities Act; and (5) aided and abetted violations by Allen of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Section 17(a) of the Securities Act.

Against PAA, the Court assesses penalties of $100,000 for each of the two statutory violations found by the jury. The jury found that PAA (1) violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder; and (2) violated Section 17(a)(1) and Section 17(a)(2) or (3) of the Securities Act.

In total, the Court imposes $120,000 in penalties against Allen, $100,000 in penalties against Wasserman, and $200,000 in penalties against PAA.

## CONCLUSION

The Court grants relief in three forms: (1) a permanent injunction, enjoining Defendants from future violations of the antifraud provisions of the securities laws; (2) disgorgement in the amounts of $860,000 plus $199,721.28 in prejudgment interest thereon from PAA and Allen, jointly and severally, and $166,427 plus $38,649.97 in prejudgment interest thereon from Allen alone; and (3) the imposition of civil penalties in the amounts of $120,000 from Allen, $100,000 from Wasserman, and $200,000 from PAA.

9

Plaintiff shall submit a formal proposed judgment in accordance with the foregoing.

SO ORDERED.

Dated: New York, New York
September 23, 2019

_____
KIMBA M. WOOD
United States District Judge